**FILED**

**JANUARY 22, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPENTA ENTERPRISES LTD., | ) | |
| an Illinois corporation, and | ) | |
| HOSHANG R. KARANI, an individual, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. |
| | ) | |
| CHIZUCO COLEMAN, an individual, | ) | |
| and ROBERT COLEMAN, an individual, | ) | |
| Defendants. | ) | |

**08 C 495**

**JUDGE GETTLEMAN
MAGISTRATE JUDGE COLE**

## COMPLAINT

Now come the Plaintiffs, Spenta Enterprises, Ltd. ("Spenta") and Hoshang R. Karani ("Karani") (collectively "Plaintiffs"), by their attorneys, Ralph C. Hardesty and Associates, and for their Complaint against the Defendants, Chizuco Coleman ("Chizuco") and Robert Coleman ("Robert")(collectively "Defendants"), allege as follows.

### Jurisdiction and Venue

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 (a)(1) based upon diversity of citizenship of the parties and that the damages claimed are in excess of $75,000.00.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §1331 based upon federal question jurisdiction because one of Plaintiffs' claims arise under the federal securities laws.  This Court has pendent jurisdiction over all ancillary state law claims alleged herein.

2.      Venue is proper within this judicial district under 28 U.S.C. §1391(b) as both Plaintiffs are Illinois residents, the transaction giving rise to this action took place within the Northern District of Illinois, and the Defendants reside in the state of Wisconsin.

3.      Venue is also proper in this judicial district because the contract at issue here and its related documents expressly agree to litigation in this venue.

1

**The Parties**

4.      Spenta is an Illinois corporation in good standing, and is the purchaser under a Stock Purchase Agreement (the "Agreement") dated on or about September 27, 2006 of 100% of the stock of Coleman Fire Proof Door Co., an Illinois corporation (the "Company"). The Agreement is attached hereto as Exhibit A.

5.      Karani is an individual and resident of the State of Illinois, and is the guarantor of Spenta as Purchaser under the Agreement via a written Guaranty, a copy of which is attached hereto as Exhibit B.

6.      Chizuco is the Seller under the Agreement and was the owner of 100% of the stock of the Company.  Robert is Chizuco's husband, who ran the Company before the purchase.

7.      Robert and Chizuco, as part of the sale, both executed Confidential Information and Noncompetition Agreements ("Noncompetition Agreements").  Copies of those Noncompetition Agreements are attached hereto as Exhibits C and D.

**Facts Common to All Counts**

8.      On or about September 27, 2006, Spenta, as Purchaser, entered into the Agreement with Chizuco, as Seller, to purchase 100% of the stock of the Company for a total purchase price of Three Million ($3,000,000.00) Dollars, payable in cash of $2,200,000.00, and the balance of $800,000.00 to be paid under an installment note (the "Note").  A copy of the Note is attached hereto as Exhibit E.

9.      To secure the payment of the Note, Spenta and Chizuco entered into a Security Agreement (the "Security Agreement"), whereby Chizuco took a security interest in and to certain assets of the Company subordinated to that of the senior bank lenders.

10.    Section 2.2(b) of the Agreement required Chizuco, within 30 days of the closing date, to prepare a Post Closing Balance Sheet ("PCBS") which Spenta would verify or object to.  The items in the PCBS were to be used to establish the final adjusted purchase price, and valid objections thereto would lower the price paid by Spenta.  The PCBS was required by the Agreement to be prepared in accord the Generally Accepted Accounting Practices ("GAAP").

11.    While the closing date for the purchase was September 27, 2006, Chizuco did not turn over possession to Spenta until the next day, September 28, 2006.  Spenta later learned that vast amounts of materials had been shipped by Chizuco on September 28, 2006, in order for those materials to be incorrectly included in the Company's Accounts Receivable for which Chizuco would charge Spenta in the post-closing reconciliation.

12.    When Spenta took possession of the Company, it discovered after the Closing that Chizuco had taken all Company bank records from the premises, in violation of the Agreement. The failure of Chizuco to turn over bank records to Spenta harmed Spenta in running the business, made it impossible for Spenta to verify payments made to vendors, made it difficult for Spenta to check the value of inventory, receivables and other entries on the PCBS eventually prepared by Chizuco, and caused numerous problems for Spenta.  For many months, Spenta demanded the return of these bank records, but Chizuco never complied.

13.    Because Chizuco took the bank records, Spenta was not able to ascertain the amount in the cash account that Chizuco took from the Company, but, upon information and belief, Chizuco took a large amount of money, upon information and belief, several hundred thousand dollars, to which she was not entitled.

14.    In addition, the PCBS prepared by Chizuco was delivered after the date required by the Agreement, was not prepared in accord with GAAP, lacked backup for claimed items and was materially misstated.

15.    Following the receipt of the PCBS, Spenta began the process of trying to verify figures in the PCBS and immediately began finding problems and discrepancies.

16.    Spenta learned in the first days after Closing that Chizuco had kept two sets of books for Accounts Receivable which did not match as to key items.

17.    Financial statements given by Chizuco to Spenta prior to the sale were materially false and misrepresented the financial condition of the Company. Spenta learned from the state and movement of a large portion of the Company's inventory that Chizuco had manipulated inventory totals reported month to month on the financial statements given to Spenta in order to show an inflated profit margin.

18.    Spenta discovered after the Closing that certain customer orders were shipped several days after closing, but were incorrectly listed as Accounts Receivable in the PCBS in order to improperly credit Chizuco with the items.

19.    Spenta discovered after the Closing that certain items listed as Accounts Receivable were older than 60 days (in violation of the definition of a Receivable in the Agreement).

20.    Certain Receivables were subject to back charges authorized by Robert but never posted to either set of books.

21.    Other Receivables were disputed by the customers claiming prior payments and/or other credits.

22.     Spenta discovered after the Closing that Chizuco had arranged with one large vendor to have payment extended to 90 day terms, and increased the credit limit with another large vendor just before Closing and after Spenta had done its due diligence. Thus, Spenta was unexpectedly hit with approximately $500,000 of Accounts Payable, some going back to June and July, within a short time of the Closing.

23.     Spenta discovered after the Closing that Chizuco had underpaid some vendor bills, tried to take double credits from vendors to which she was not entitled, and did not have cancelled checks for vendor bills she claimed were paid but which the vendors claimed were still due and owing.  All of these actions understated the actual amount of the Accounts Payable for the Company.

24.     Spenta also discovered after the Closing that the inventory value had been inflated by Chizuco.  Obsolete hardware was included in inventory at retail prices, certain "inventory" had already been paid for by customers (so that this "inventory" did not belong to the business), and other "inventory" was not even sellable.  The inflation of the inventory with one large customer alone was to least $182,000.

25.     Demonstrating how inventory was falsely inflated by Chizuco for the sale to Plaintiffs, obsolete hardware and parts alone were carried on the books at nearly $300,000.

26.     Spenta discovered after the Closing that Chizuco had also inflated the sales figures that were given to induce Spenta to purchase of the Company.

27.     Cash flow of the Company since the Closing has never reached the level claimed by Chizuco.

28.     Spenta discovered after the Closing that certain contracts had been over-billed and the money collected, for amounts in excess of work done during the time Chizuco operated the

Company.   Upon information and belief, as much as $445,000 was improperly billed by

Chizuco for work and materials not yet provided on one large customer's job alone.

29.    Spenta also discovered after the Closing that personnel records were incomplete,

benefits were poorly documented, and after closing Spenta became liable for vacation time and

other benefits for certain employees when it could not prove that those employees had already been

given the benefits called for.

30.    Spenta was also charged for additional insurance premiums, penalties and interest

and workers compensation premiums because Chizuco had underreported sales and miscatagorized

workers' wages to its insurers. The Company under Chizuco's management had promised

employees life insurance, but had allowed the policies to lapse in 2005.

31.    Spenta also discovered after the closing the company Profit Sharing 401(k) Plan was

in violation of ERISA and therefore non-compliant with regard to the Plan.  Chizuco and Robert

had taken maximum deferral for 3 years (2003, 2004 and 2005) and had not notified nor allowed

any single employee to know about the 401(k) addition, nor to participate in their right to deferrals

according to the law.

32.    Spenta also discovered after the Closing that the Company was not in compliance

with certain tax related matters, including but not limited to sales taxes due from the Company

which Chizuco had agreed to send to the state but then failed to do so.

33.    Spenta objected in writing in a timely fashion to the PCBS and hired accountants to

try to ascertain the actual PCBS figures and attempted to learn how much the purchase price for the

Company had been inflated by Chizuco.

34.     Chizuco refused to make any adjustments to the PCBS, refused to cooperate with Spenta's investigations, and has refused to compensate Spenta for the inflated purchase price caused by items listed above.

35.     Chizuco has further refused to compensate Spenta for the overstatement of inventory, overstatement of the Accounts Receivable, understatement of the Accounts Payable, or any of the other problems of the Company directly caused by Chizuco.

36.     Chizuco and Robert were required to provide consulting services to the Company after Closing, but both have refused to do so.

37.     Chizuco and Robert were required by their Noncompetition Agreements to keep Company information confidential, to refrain from contacting customers and employees of the Company, and to refrain from disparagement of the Company.

38.     Both Chizuco and Robert have violated these Noncompetition Agreements, and have disparaged the Company, approached customers, vendors, and past and present employees of the Company.  Defendants also contacted a competitor of Spenta to try to steer a key Company employee to that competitor of Spenta.

39.     Despite all of the misrepresentations, breaches of the warranties given, accounting irregularities, and incorrect financial data from Chizuco, through the date of filing this Complaint, Spenta and Karani have made every monthly payment to Chizuco allegedly due under the Note for the balance of the Purchase Price.  Further, Karani remains responsible as guarantor of Spenta on the Note without relief from this Court.

## Count I

### Breach of Contract (Closing Date Balance Sheet)
### Against Defendant Chizuco Coleman

40.     Plaintiffs incorporate the allegations of Paragraphs 1 to 39 inclusive as Paragraph 40 of this Count I as if set forth fully herein.

41.     The Agreement executed by and between the Plaintiffs and Chizuco was a legal and binding contract between them.

42.     Good and valuable consideration for the Agreement and the promises and obligations contained therein, including but not limited to the Purchase Price, was given by Plaintiffs and received by Chizuco.

43.     The Agreement provided that, as of the Closing, that a balance sheet would be prepared by the seller (Chizuco).  *See* Agreement, Section 2.2(b).

44.     In pertinent part, the Agreement in Section 2.2 (b) provided that:

 [w]ithin thirty (30) days after the Closing Date, the Seller shall cause to be prepared a balance sheet of the Company as of the Closing Date (the "Closing Date Balance Sheet"), which shall be prepared in accordance with GAAP and shall include all payables and accruals and other amounts that would be included in a GAAP statement.  The closing Date Balance Sheet shall be compiled by Ravencroft, Ltd. ("Seller's Accountants"), at the Seller's expense.  Seller shall cause Seller's Accountants to make available to Purchaser and Purchaser's representatives the work papers of the Seller's Accountants used in connection with the preparation of the Closing Date Balance Sheet, and shall permit Purchaser and Purchaser's representatives to observe the taking of the related physical inventory.

*See* Agreement, Section 2.2(b).

45.     The purpose of the Closing Date Balance Sheet (CDBS) was to determine if any adjustment to the Purchase Price was necessary.

46.     Section 2.2 (d) of the Agreement provided for the pre-Closing Date basis for the determination of the Purchase Price:

> Purchaser and Seller agree that the Purchase Price was determined and agreed to by the parties based in part on the Seller's Balance Sheet of April 30, 2006 (the "April Balance Sheet") which among other things, reflected Seller's inventories and work in process in the amount of $350,000, office fixtures, machinery and equipment and leasehold improvements in the amount of $275,000, and accounts receivables in the amount of not less than $1,900,000, for a total of $2,525,000 (the "Assets Amount") and accounts payable in the amount of $1,200,000 (the "Liabilities Amount").

*See* Agreement, Section 2.2(d).

47.    The CDBS was to be prepared as a basis of comparison to the figures of the April Balance Sheet, and adjustments then were to be made to the Purchase Price, upward or downward, if necessary, as follows:

> In the event that the Assets Amount less the Liabilities Amount (the "Net Assets Amount") as set forth on the Closing Date Balance Sheet is in Excess of $1,325,000 (the "Target Amount"), then the Purchase Price shall be adjusted upward by the amount by which the Net Assets Amount shall exceed the Target Amount and the difference (the "Positive Adjustment Amount") shall be paid by Purchaser as set forth herein….In the event that the Net Assets Amount is less than the Target Amount, the amount of the difference (the "Negative Adjustment Amount") shall be deemed to be a downward adjustment of the Purchase Price and shall be promptly paid by Seller to Purchaser by wire transfer to an account specified by Purchaser and if not paid in full upon demand shall be offset against the Note which shall be reduced by such amount and reissued in the lesser amount with payments adjusted to reflect the reduced principal amount thereof….

*See* Agreement, Section 2.2(d).

48.    Chizuco did eventually have her Accountants, Ravencroft, Ltd., prepare a CDBS.

49.    In breach of Section 2.2(b), Chizuco did not cause the CDBS to be prepared within 30 days; it was not prepared and sent to Plaintiffs by email until November 1,  2006, which is more than 30 days after the September 26, 2006 Closing Date.

50.    In further breach of Section 2.2(b), the CDBS was not prepared in accordance with GAAP, in that it:

a)   failed to accurately reflect the financial condition of the Company;

b)  failed to have proper back-up to support the balance sheet;

c)  failed to investigate and authenticate entries in Accounts Receivable and Accounts Payable;

d)  used an improper and unverified method to calculate inventory;

e)  failed to reflect transactions which should have been posted to the balance sheet;

f)  failed to verify amounts claimed to be receivables;

g)  failed to accrue money for known liabilities; and

h)  failed to verify that payments received were for work actually performed.

51.    In further breach of Section 2.2(b), Chizuco did not make available to Plaintiffs or their representatives Ravencroft's working papers, and Accounts Payable and Accounts receivable ledgers were not presented until mid November.

52.    Upon receiving and reviewing the CDBS with their accounting experts, Plaintiffs determined that the CDBS must be disputed, as it indicated that the value of the Company had been materially overstated by Chizuco.

53.    The Company's value was approximately $1.1 million less than what Plaintiffs had been led to believe by Chizuco.

54.    The Agreement provided for a resolution process if a dispute arose regarding the CDBS, and provided in Section 2.2(c) that the Purchaser had fifteen (15) days from receipt of the Closing Date Balance Sheet from Seller (referred to as "the Dispute Period") to dispute any of the elements of or amounts reflected on the CDBS.   *See* Agreement, Section 2.2(c)(i).

55.    In conformity with Section 2.2(c)(i), Plaintiffs gave written notice of their dispute of the Closing Date Balance Sheet to Chizuco by letter of their legal counsel on November 13, 2006. Numerous letters from Spenta's accountants followed as more irregularities were discovered.

56.    The Agreement further provides that "within thirty (30) days after delivery of such Dispute Notice, the parties hereto shall in good faith attempt to resolve such Dispute and agree in

writing upon the final content of the Closing [Date] Balance Sheet." *See* Agreement, Section 2.2(c)(i).

57.    During that thirty day period, Plaintiffs, through their legal counsel, continued to dispute the CDBS, and the issues were not resolved during that time frame.

58.    The Agreement provided that if "Purchaser and Seller are unable to resolve any Dispute within the thirty (30) day period…, a certified public accounting firm mutually acceptable to the Purchaser and Seller (the "Arbitrating Accountant") shall be engaged as arbitrator hereunder to settle such Dispute as soon as practicable. The Arbitrating Accountant's determination with respect to any Dispute shall be final and binding upon the parties hereto." *See* Agreement, Section 2.2(c)(ii).

59.    Spenta's objections to the PCBS were not submitted to an arbitrating accountant per Section 2.2(c)(ii) of the Agreement, because Chizuco never produced: 1) the bank records; 2) an account of fixed assets; 3) waivers for the 401(k) Plan; 4) proof of payments for vendors, inventory purchases and accrued liabilities; 5) closing work papers; 6) nor would she disclose the amount of cash taken from the Company on the closing date. This lack of cooperation by Chizuco did not allow the parties to implement Section 2.2(c)(ii).

60.    In fact, Plaintiffs have been forced to perform their own accounting which has determined that the actual post closing balance sheet figures are that:

a)    Inventory was over-valued by about $324,000;

b)    Accounts receivable were over-valued by about $187,000;

c)    Accounts payable were under-stated by about $221,000;

d)    Over-billing for work not yet performed was about $445,000; and

e)    Accrued expenses not disclosed (ERISA liability, vacation liability, payroll, insurance premiums, and other un-booked liabilities) were about $130,000.

61.     Plaintiffs have performed all of their obligations under Section 2.2 concerning the dispute of the Closing Date Balance Sheet.

62.     In breach of the Agreement, specifically Section 2.2, Chizuco has failed to perform her obligations concerning the dispute of the Closing Date Balance Sheet.

63.     Due to the breaches of the Agreement by Chizuco as set forth above, Plaintiffs have been damaged in that they:

a)     have been made to pay $3,000,000 purchase price for a company that is only worth $1.9 million;

b)     have not been given the approximately $1.1 million reduction in the Purchase Price called for by the Agreement; and

c)     have incurred accounting, legal and other professional fees in association with disputing and attempting to collect from Chizuco for this disputed balance sheet amounts.

64.     Plaintiffs have given Chizuco written notice of her breach and default under the Agreement by letter from their counsel dated November 13, 2006, and by numerous letters thereafter.

**WHEREFORE,** Plaintiff Spenta Enterprises, Ltd. prays that this Honorable Court enter judgment in its favor on this Count I against the Defendant Chizuco Coleman, in the amount of $1,200,000, plus the costs of this litigation, and such and other further relief this Court deems just.

## <u>Count II</u>

### Breach of Contract (Representations and Warranties)
### Against Defendant Chizuco Coleman

65.     Plaintiffs incorporate the allegations of Paragraphs 1 to 64 inclusive as Paragraph 65 of this Count II as if set forth fully herein.

66.     The Agreement executed by and between the Plaintiffs and Chizuco was a legal and binding contract between them.

67.     Good and valuable consideration for the Agreement and the promises and obligations contained therein, including but not limited to the Purchase Price, was given by Plaintiffs and received by Chizuco.

68.     The Agreement included provisions in Article II thereof whereby the seller (Chizuco) made certain representations and warranties:  "As an inducement to Purchaser to enter into this Agreement and to consummate the Acquisition [of the Company stock], Seller represents and warrants to the Purchaser as follows.…"  *See* Agreement, Art. III.

69.     Specifically, Chizuco represented and warranted in Section 3.7 that "except as disclosed therein or in Schedule 3.7, the Financial Statements are true, correct and complete and have been prepared on a tax accounting basis, consistently applied.  The Financial Statements fairly present in all material respects the financial position and results of operations of the Company as of the dates…."  *See* Agreement, Section 3.7.

70.     In breach of this representation and warranty by Chizuco, in fact, the Financial Statements were incorrect, incomplete, and contained false statements, and did not fairly represent the financial position of the Company, including but not limited to that:

a)  Accounts Receivable were overstated;

b)  Accounts Payable were understated;

c)  Payments had been received in excess of work performed on certain jobs;

d)  Liabilities for insurance, taxes, and employee benefits were understated;

e)  Sales and cash flow had been materially overstated;

f)  Other liabilities were missing from the statements; and

g)  Profit margins were inflated by the manipulation of inventory and cost of goods figures.

71.     Further, Chizuco represented and warranted concerning the Accounts Receivable of the business, in Section 3.25, that "except as disclosed therein or in Schedule 3.25, ….(c) the

Company has not received advance payment, in whole or in part, from any customer with respect to good or services of the Company that will be produced or provided, as the case may be, after the Closing Date…." *See* Agreement, Section 3.25.

72.     In breach of this representation and warranty by Chizuco, there were customers from which Chizuco and the Company received advance payment beyond the amount of work completed. This included the payments from a customer for the largest job ever undertaken by the Company

73.     Chizuco represented and warranted concerning the inventory of the business, in Section 3.26, that "except as disclosed therein or in Schedule 3.26, (a) the Inventory constituting raw materials and supplies is usable in the ordinary course of business; (b) the Inventory constituting finished products is of merchantable quality and is saleable in the ordinary course of business at normal (non-discounted) selling prices…." *See* Agreement, Section 3.26.

74.     Further as to inventory, in one of the schedules attached to the Agreement, Chizuco warranted to lenders that no inventory was older than December 31, 2005.

75.     In breach of these representations and warranties by Chizuco, in fact, the inventory of the Company included unusable, unsalable materials and supplies in the amount of at least $324,000.  Further, some of the inventory dated back years prior to 12/31/05.

76.     Chizuco also represented and warranted in Section 3.8 that "the Company does not have any obligations or liabilities (whether accrued, absolute, contingent, accrued or otherwise, whether due or to become due and regardless of by whom asserted) arising out of any transaction entered at or prior to the date hereof or any action or inaction of the Company at or prior to the date hereof[] in respect of the Business other than (a) the liabilities disclosed on Schedule 3.8; (b) liabilities under any of the Transaction Documents; and (c) liabilities reflected in the Financial Statements delivered to Purchaser prior to the date hereof." *See* Agreement, Section 2.8.

77.     In breach of this representation and warranty by Chizuco, in fact, the Company had numerous liabilities that were not disclosed by Chizuco to Plaintiffs, including but not limited to sales tax liability, insurance premium liability, liability to employees for vacation time, ERISA liability, un-posted payables, and inflated receivables.

78.     Further, Chizuco represented and warranted in Section 3.15 that "[e]xcept as disclosed in Schedule 3.15, there are no actions, suits, arbitrations, regulatory proceedings or other litigation, proceedings or governmental investigations pending or, to the knowledge of Seller, threatened against or affecting the Company or any of its officers, directors, managers, employees, agents or members in their capacity as such, or any of its properties or businesses." *See* Agreement, Section 3.15.

79.     In breach of this representation and warranty by Chizuco, in fact, the Company had three pending lawsuits and one threatened claim that were not disclosed by Chizuco, including but not limited to the Craig Millwork, Inc. claim for $10,362.50 on the Sauganash Place job involving WE O'Neill Construction; F&V Construction/Edwin G. Foreman High School for $40,193.25; College of Lake County/Picus for $25,604.10; and the Scales Construction/Collins High School Project for $16,942.50.

80.     Chizuco also represented and warranted in Section 3.17 that:

Schedule 3.17 contains a complete list, as of the date hereof, of each Benefit Plan. Except as set forth in Schedule 3.17, the Company has provided or made available to Purchaser true and complete copies of each Benefit Plan sponsored by or maintained by the Company in which the Company participates and with respect to any Benefit Plan that is sponsored by the Company…all contracts relating thereto, or to the funding thereof, including without limitation, all trust agreements, insurance contracts, administration contracts, investment management agreements, subscription and participation agreements and recordkeeping agreements, each as in effect on the date hereof.

*See* Agreement, Section 3.17.

81.     Chizuco also represented and warranted in Section 3.17(a) that:

All Benefit Plans have been maintained and administered in form and in operation in all material respects in accordance with their terms and with all applicable requirements of law (including, in the case of any Benefit Plan which is an employee pension benefit plan, the requirements of section 401(a) and 501(a) of the [Internal Revenue] Code, …[and] no event has occurred which could reasonably be expected to cause any Benefit Plan to fail to comply with such requirements.

*See* Agreement, Section 3.17(a).

82.     Further, Chizuco represented and warranted in Section 3.14 that: "[t]he Company is not in conflict with in default or violation of any law applicable to the Company or the Business and no event has occurred or circumstance exists which, with or without notice or lapse of time or both, would constitute a violation or default of any law applicable to the Company, the violation of which would have a material adverse effect upon the conduct or operations of the Company's business, assets or properties." *See* Agreement, Section 3.14.

83.     Chizuco breached these warranties and representations in Section 3.14 and 3.17 in that:

a)   several company employees allege that they were not notified of their right to participate in the 401(k) plan, no waivers were produced, and litigation has been threatened by them;

b)  the Company failed  to keep and maintain employee personnel and payroll records in accordance with federal and state laws;

c)  Chizuco promised a life insurance benefit to workers, but the insurance had been cancelled in 2005 for non-payment;

d)  Chizuco did not accrue for monies owed to employees for vacations;

e)  Chizuco did not maintain personnel records containing start and termination dates, W-4s, birth dates, and other important information.

84.     Plaintiffs have performed all of their obligations under the Agreement and abided by all of the representations and warranties Plaintiffs made under the Agreement.

85.     The representations and warranties made by Chizuco in the Agreement and set forth herein were material to Plaintiffs in entering into the Agreement, they reasonably relied upon these

representations and warranties, and Plaintiffs would not have entered into the Agreement without the representations and warranties made by Chizuco.

86.    Due to the breaches of the Agreement by Chizuco concerning these representations and warranties, Plaintiffs have been damaged in that:

a)    Spenta has been made to pay $3,000,000 purchase price for a company that is only worth $1.9 million;

b)    Spenta has not been given the approximately $1.1 million reduction in the Purchase Price called for by the Agreement;

c)    Spenta has incurred accounting, legal and other professional fees of approximately $132,000 in association with disputing and attempting to collect from Chizuco for this disputed balance sheet amounts;

d)    Spenta had incurred court expenses to support Chizuco's failed vacation policy;

e)    Spenta has had to pay three former employees accrued vacation monies due from Chizuco;

f)    Spenta has had to make a special accrual for accrued vacation without repayment from Chizuco;

g)    Spenta has spent considerable time and incurred considerable expense to attempt a remedy to the Profit Sharing /401(k) Plan, and Chizuco has refused  to consider, or pay for, this remedy;

h)    Recently, Spenta has undergone a Profit Sharing/401k audit by the IRS, which is seeking. written waivers from the employees who allegedly did not want to join the Plan,  which have never been produced by, and Spenta is waiting for IRS action; and.

i)    Spenta has incurred expenses and officer time because of the need to work considerable hours in reconstructing employee files because none existed.

**WHEREFORE,** Plaintiff Spenta Enterprises, Ltd. prays that this Honorable Court enter judgment in its favor on this Count II against the Defendant Chizuco Coleman, in the amount of $1,200,000, plus the costs of this litigation, and such and other further relief this Court deems just.

## Count III

### Breach of Contract
### Against Defendant Chizuco Coleman

87.     Plaintiffs incorporate the allegations of Paragraphs 1 to 86 inclusive as

Paragraph 87 of this Count III as if set forth fully herein.

88.     The Agreement executed by and between the Plaintiffs and Chizuco was a legal and

binding contract between them.

89.     Good and valuable consideration for the Agreement and the promises and obligations

contained therein, including but not limited to the Purchase Price, was given by Plaintiffs and

received by Chizuco.

90.     Plaintiffs have performed all their obligations and promises under the Agreement.

91.     Chizuco had breached the Agreement and the promises and obligations contained

therein, in that:

    a)     Chizuco took records belonging to the company from the premises in violation of the
        contract;

    b)     Chizuco inflated the Accounts Receivable;

    c)     Chizuco understated Accounts Payable and left unposted invoices to Accounts
        Payable;

    d)     Chizuco prepared the September Sales Tax Report Filing and wrote a check for the
        same but failed to mail the same, causing penalties and interest to accumulate until
        discovered by Spenta and paid by Spenta;

    e)     Chizuco arranged for a final Inventory that inflated inventory and included obsolete
        and unsellable items which were priced at an inflated amount;

    f)     Chizuco kept an addition to the Profit Sharing Plan, the 401(k) element, from the
        employees thereby creating a Plan that has been audited by the IRS and may result in
        liability, and  Chizuco then passed this obligation onto Spenta in violation of her
        indemnity and warranties in the Agreement;

g)   Chizuco falsely stated in the Agreement that $25k Life insurance is a covered employee benefit, but the insurance carrier had cancelled the Life policy for non-payment in 2005;

h)   Chizuco gave additional health benefits to key employees without the carrier's knowledge and without permission of a different class thereby being discriminatory to the other employees not given these benefits; and

i)   Chizuco underreported the total number employed to the health insurance carrier, and gave those employees that did not want the insurance a Company check for the insurance premium.  However, these employees never waived out of the plan, but were just not reported.

92.   Due to the breaches of the Agreement by Chizuco, Plaintiffs have been damaged in

that:

a)   Spenta has been made to pay $3,000,000 purchase price for a company that is only worth $1.9 million;

b)   Spenta has not been given the approximately $1.1 million reduction in the Purchase Price called for by the Agreement;

c)   Spenta has incurred accounting, legal and other professional fees in association with disputing and attempting to collect from Chizuzo for this disputed balance sheet amounts;

d)   Spenta had to pay fees and court costs to support Chizuco's failed vacation policy;

e)   Spenta has had to pay three former employees accrued vacation monies due from Chizuco;

f)   Spenta has had to make a special accrual for accrued vacation without repayment from Chizuco;

g)   Spenta has spent considerable time and incurred considerable expense to attempt a remedy to the Profit Sharing /401(k) Plan, and Chizuco has refused  to consider, or pay for, this remedy;

h)   Recently, Spenta has undergone a Profit Sharing/401k audit by the IRS, which is seeking.  written waivers from the employees who allegedly did not want to join the Plan,  which have never been produced by, and Spenta is waiting for IRS action; and.

i)   Spenta has incurred expenses and officer time because of the need to work considerable hours in reconstructing employee files because none existed.

**WHEREFORE,** Plaintiff Spenta Enterprises, Ltd. prays that this Honorable Court enter judgment in its favor on this Count III against the Defendant Chizuco Coleman, in the amount of $1,200,000, plus the costs of this litigation, and such other further relief this Court deems just.

## Count IV

### Indemnification
### Against Defendant Chizuco Coleman

93.     Plaintiffs incorporate the allegations of Paragraphs 1 to 92 inclusive as Paragraph 93 of this Count IV as if set forth fully herein.

94.     The Agreement executed by and between the Plaintiffs and Chizuco was a legal and binding contract between them.

95.     Good and valuable consideration for the Agreement and the promises and obligations contained therein, including but not limited to the Purchase Price, was given by Plaintiffs and received by Chizuco.

96.     The Agreement included a provision for indemnification between the Plaintiffs and Chizuco.  Specifically, in Section 8.1, the Agreement provided that "except as expressly provided by Section 8.1, the representations and warranties of the parties to this Agreement or in any other Transaction Document hereto shall survive the Closing for a period of eighteen (18) months. ….[A]ny representation and warranty which was known by the Seller or Company to be untrue when made, shall survive the Closing without limitation."  *See* Agreement, Section 8.1.

97.     The Agreement further provided that the Seller, Chizuco, agreed to indemnification of the Plaintiffs as follows: "…Seller shall indemnify, defend, save and hold Purchaser, Purchaser's Affiliates (including, after the Closing, the Company) and the Representatives of any of them)…harmless from and against any and all Losses incurred by Purchaser…arising out of: a) any

breach or any representation or warranty made by Seller in this Agreement or in any Transaction

Document; and b) any breach of any covenant or agreement made by Seller or the Company in or

pursuant to this Agreement or any Transaction Document." *See* Agreement, Section 8.2.

98.    Chizuco has breached this Agreement, and its representations and warranties, and

Plaintiff Spenta should be indemnified for:

a)    Accounts payable were understated by about $221,000;

b)    Accounts Receivable were over stated by $187,000;

c)    Overbilling for work not yet performed was about $445,000;

d)    Accrued expenses not disclosed (ERISA liability, vacation liability, payroll, insurance premiums, and other unbooked liabilities) were about $130,000;

e)    interest on the Note to Chizuco of approximately $41,000;

f)    interest of approximately $88,000 for a loan taken out by Spenta to pay accounts payable, accrued expenses and other items of damages attributable to Chuzuco;

g)    attorneys' and accountants' fees and costs of approximately $ 132,000.

99.    Plaintiffs have given Chizuco notice of their claim of indemnification under the

Agreement, pursuant to Section 8.4.

100.    The aggregate loss by Plaintiffs is in excess of $37,500.00, which is the "basket"

amount required under the Agreement, Section 8.7, for indemnification.

101.    Plaintiffs have been damaged in the amount of $1,200,000, which includes but is not

limited to:

a)    Spenta has not been given the approximately $1.1 million reduction in the Purchase Price called for by the Agreement;

b)    Spenta has been made to pay $3,000,000 purchase price for a company that is only worth $1.9 million;

c)    Spenta has incurred accounting, legal and other professional fees in association with disputing and attempting to collect from Chizuzo for this disputed balance sheet amounts;

d)      Spenta incurred fees and court costs to support Chizuco's failed vacation policy;

e)      Spenta has had to pay three former employees accrued vacation monies due from Chizuco;

f)      Spenta has had to make a special accrual for accrued vacation without repayment from Chizuco;

g)      Chizuco has refused to accept responsibility for these prior claims even when given the opportunity to correct this liability herself;

h)      Spenta has spent considerable time and incurred considerable expense to attempt a remedy to the Profit Sharing /401(k) Plan, and Chizuco has refused to consider, or pay for, this remedy;

i)      Recently, Spenta has undergone a Profit Sharing/401k audit by the IRS, which is seeking written waivers from the employees who allegedly did not want to join the Plan, which have never been produced by, and Spenta is waiting for IRS action; and.

j)      Spenta has incurred expenses and officer time because of the need to work considerable hours in reconstructing employee files because none existed.

**WHEREFORE,** Plaintiff Spenta Enterprises, Ltd. prays that this Honorable Court enter judgment in its favor on this Count IV against the Defendant Chizuco Coleman, in the amount of $1,200,000, plus the costs of this litigation, and such and other further relief this Court deems just.

### Count V

**Federal Securities Fraud Section 10(b)**
**15 U.S.C. Section 78(j)(b)**
**Against Defendants Robert Coleman and Chizuco Coleman**

102.    Plaintiffs incorporate the allegations of Paragraphs 1 to 101 inclusive as Paragraph 102 of this Count V as if set forth fully herein.

103.    The Agreement executed by and between the Plaintiffs and Chizuco was for the purchase of 100% of the stock of the Company.

104.    Defendant Chizuco, the named Seller under the Agreement, made various statements and representations to Plaintiffs in connection with the purchase of the stock of the Company.

105.    Defendant Robert, though not the actual holder of the Company stock, and thus not the named Seller under the Agreement, also made various statements and representations to Plaintiffs in connection with the purchase of the stock.

106.    The purchase of the Company's stock by Plaintiffs, that is, the negotiations, and conveyance of information by and between the parties, including from Robert and Chizuco, was conducted via the United States Mail, via telephone, facsimile and email.

107.    At the time of the negotiations and purchase of the stock by Plaintiffs, Plaintiffs resided in Illinois, and Robert and Chizuco resided in Illinois, but often were located in the state of Wisconsin during this time period.

108.    Robert and Chizuco, in connection with sale of the stock of the Company to Plaintiffs, directly or indirectly, and by use of a means or instrumentality of interstate commerce or of the mails, used or employed manipulative or deceptive actions, to induce Plaintiffs' purchase of the stock of the Company and to defraud them, including but not limited to:

a)  Used e-mail, facsimiles, the telephone and U.S. Mail to transmit false financial statements to Spenta to induce the purchase of the stock;

b)  Used e-mail, facsimile, the telephone and U.S. Mail to provide false financial information to Spenta to induce the purchase of the stock; and

c)  Used e-mail, facsimiles, the telephone and U.S. Mail to transmit false information to Spenta concerning the financial condition of the Company, including inflated sales and profit figures, under-stated liabilities and other information to induce Spenta to purchase stock.

109.    Robert and Chizuco made untrue statements of material fact to Plaintiffs in connection with the sale of the stock of the Company, specifically including but not limited to:

a)  Gave Spenta financial statements in which Accounts Receivable were overstated;

b) Gave Spenta financial statements in which Accounts Payable were understated;

c)  failed to reveal that payments had been received in excess of work performed on certain jobs;

d)  Liabilities for insurance, taxes, and employee benefits were understated;

e)  Sales and cash flow margin were materially overstated;

f)  Other liabilities were missing from the statements; and

g)  Profit margins were inflated by the manipulation of inventory and cost of goods figures.

110.    Robert and Chizuco made omissions of material fact to Plaintiffs in connection with the sale of the stock of the Company, specifically including but not limited to:

a)    Robert and Chizuco willfully prepared the September Sales Tax Report Filing and wrote a check for the same but failed to mail the same, causing penalties and interest to accumulate until discovered by Spenta and paid by Spenta;

b)    Robert and Chizuco arranged for a final Inventory that inflated inventory and included obsolete and unsellable items which were priced at an inflated amount;

c)    Robert and Chizuco willfully kept an addition to the Profit Sharing Plan, the 401(k) element, from the employees thereby creating a Plan that may be non-compliant and in violation of ERISA and the employees' rights, and Chizuco then passed this obligation onto Spenta in violation of her indemnity and warranties in the contract;

d)    Robert and Chizuco falsely stated in the Agreement that $25k Life insurance is a covered employee benefit, but the insurance carrier had cancelled the Life policy for non-payment in 2005;

e)    Robert and Chizuco willfully gave additional health benefits to key employees without the carrier knowledge and without permission of a different class thereby being discriminatory to the other employees not given these benefits;

f)    Robert and Chizuco willfully underreported the total number employed to the health insurance carrier, and gave those employees that did not want the insurance a Company check for the insurance premium.  However, these employees never waived out of the plan, but were just not reported; and

g)    Robert and Chizuco concealed the Company's liabilities to employees, the IRS, the Illinois Department of Revenue, its insurance carriers and others.

111.    Robert and Chizuco otherwise engaged in acts, practices and courses of business that defrauded and deceived Plaintiffs in connection with the sale of the stock of the Company, specifically including but not limited to:

a)    Spenta has been made to pay $3,000,000 purchase price for a company that is only worth $1.9 million;

b)    Spenta has not been given the approximately $1.1 million reduction in the Purchase Price called for by the Agreement;

c)    Spenta has incurred accounting, legal and other professional fees in association with disputing and attempting to collect from Chizuzo for this disputed balance sheet amounts;

d)    Spenta had to go to court to support Chizuco's failed vacation policy, incurring court and legal fees;

e)    Spenta has already paid three former employees accrued vacation monies due from Chizuco;

f)    Spenta has had to make a special accrual for accrued vacation without repayment from Chizuco;

g)    Chizuco has refused to accept responsibility for these prior claims even when given the opportunity to correct this liability herself;

h)    Spenta has spent considerable time and incurred considerable expense to attempt a remedy to the Profit Sharing /401(k) Plan, and Chizuco has refused to consider, or pay for, this remedy;

i)    Recently, Spenta has undergone a Profit Sharing/401k audit by the IRS, which is seeking written waivers from the employees who allegedly did not want to join the Plan, which have never been produced by, and Spenta is waiting for IRS action; and.

j)    Spenta has incurred expenses and officer time because of the need to work considerable hours in reconstructing employee files because none existed.

112.    Each of these misrepresentations and/or omissions, or otherwise deceptive practices, was material to Plaintiffs in their purchase of the stock of the Company.

113.    Plaintiffs relied on the representations and/or omissions made by Robert and Chizuco in connection with the purchase of the stock of the Company.

114.    Plaintiffs' reliance was reasonable in light of all the circumstances.

115.    Robert's and Chizuco's representations, omissions, and otherwise deceptive practices and actions violate Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. Section 78j(b).

Caused damage to Spenta. in the amount of $1,300,000, which includes but is not limited to:

116.    Plaintiffs have been damaged in the amount of $1,300,000 which includes, but is not limited to:

a)  Spenta has not been given the approximately $1.1 million reduction in the Purchase Price called for by the Agreement;

b)  Spenta has been made to pay $3,000,000 purchase price for a company that is only worth $1.9 million;

c)  Spenta has incurred accounting, legal and other professional fees in association with disputing and attempting to collect from Chizuzo for this disputed balance sheet amounts;

d)  Spenta had to go to court to support Chizuco's failed vacation policy, incurring court and legal fees;

e)  Spenta has already paid three former employees accrued vacation monies due from Chizuco;

f)  Spenta has had to make a special accrual for accrued vacation without repayment from Chizuco;

g)  Chizuco has refused to accept responsibility for these prior claims even when given the opportunity to correct this liability herself;

h)  Spenta has spent considerable time and incurred considerable expense to attempt a remedy to the Profit Sharing /401(k) Plan, and Chizuco has refused  to consider, or pay for, this remedy;

i)  Recently, Spenta has undergone a Profit Sharing/401k audit by the IRS, which is seeking.  written waivers from the employees who allegedly did not want to join the Plan,  which have never been produced by, and Spenta is waiting for IRS action; .

j)  Spenta has incurred expenses and officer time because of the need to work considerable hours in reconstructing employee files because none existed; and

k)   Spenta has spent, and will spend amounts for their attorneys fees and costs.

117.    Robert and Chizuco are jointly and severably liable for Plaintiffs' damages.

118.    Robert and Chizuco's actions are egregious and willful, and Plaintiffs are entitled to an award of punitive damages in excess of $5,000,000.

**WHEREFORE,** Plaintiff Spenta Enterprises, Ltd. prays that this Honorable Court enter judgment in its favor on this Count V against the Defendants Robert Coleman and Chizuco Coleman, jointly and severally, in the amount of $1,200,000, punitive damages in excess of $5,000,000, and award of attorneys' fees, and the costs of this litigation, and such and other further relief this Court deems just.

## Count VI

### Common Law Fraud/Frauulent Misrepresentation
### Against Defendants Robert Coleman and Chizuco Coleman

119.    Plaintiffs incorporate the allegations of Paragraphs 1 to 118 inclusive as Paragraph 119 of this Count VI as if set forth fully herein.

120.    Defendant Chizuco, the named Seller under the Agreement, made various statements, representations to Plaintiffs in connection with the purchase of the Company.

121.    Defendant Robert, though not the actual holder of the Company stock, and thus not the named Seller under the Agreement, also made various statements and representations to Plaintiffs in connection with the purchase of the Company's stock.

122.    Robert and Chizuco, in connection with sale of the stock of the Company to Plaintiffs, made untrue statements of material fact to Plaintiffs in connection with the sale of the stock of the Company, specifically including but not limited to:

a)  Gave Spenta financial statements in which Accounts Receivable were overstated;

b) Gave Spenta financial statements in which Accounts Payable were understated;

c)  failed to reveal that payments had been received in excess of work performed on certain jobs;

d)  Liabilities for insurance, taxes, and employee benefits were understated;

e)  Sales and cash flow margin were materially overstated;

f)  Other liabilities were missing from the statements;

g) Claims and lawsuits were not disclosed; and

h)  Profit margins were inflated by the manipulation of inventory and cost of goods figures.

123.    Robert and Chizuco made omissions of material fact to Plaintiffs in connection with

the sale of the stock of the Company, specifically including but not limited to:

a)    Robert and Chizuco willfully prepared the September Sales Tax Report Filing and wrote a check for the same but failed to mail the same, causing penalties and interest to accumulate until discovered by Spenta and paid by Spenta;

b)    Robert and Chizuco arranged for a final Inventory that inflated inventory and included obsolete and unsellable items which were priced at an inflated amount;

c)    Robert and Chizuco willfully kept an addition to the Profit Sharing Plan, the 401(k) element, from the employees thereby creating a Plan that may be non-compliant and in violation of ERISA and the employees' rights, and  Chizuco then passed this obligation onto Spenta in violation of her indemnity and warranties in the contract;

d)    Robert and Chizuco falsely stated in the Agreement  that $25k Life insurance is a covered employee benefit, but the insurance carrier had cancelled the Life policy for non-payment in 2005;

e)    Robert and Chizuco willfully gave additional health benefits to key employees without the carrier knowledge and without permission of a different class thereby being discriminatory to the other employees not given these benefits;

f)    Robert and Chizuco willfully underreported the total number employed to the health insurance carrier, and gave those employees that did not want the insurance a Company check for the insurance premium.  However, these employees never waived out of the plan, but were just not reported;

g)    Robert and Chizuco shipped materials after closing and claimed the price as an Account Receivable;

h)    Robert and Chizuco knowingly over-billed jobs beyond work actually done; and

i)    Robert and Chizuco concealed the Company's liabilities to employees, the IRS, the Illinois Department of Revenue, its insurance carriers and others..

124.    Each of these misrepresentations and/or omissions, or otherwise deceptive practices

was material to Plaintiffs in their purchase of the stock of the Company.

125.    Plaintiffs relied on the representations and/or omissions made by Robert and Chizuco in connection with the purchase of the stock of the Company.

126.    Plaintiffs' reliance was reasonable in light of all the circumstances.

127.    Robert's and Chizuco's representations, omissions, and otherwise deceptive practices and actions caused Plaintiffs to be damaged, in that

a)  Spenta has not been given the approximately $1.1 million reduction in the Purchase Price called for by the Agreement;

b)  Spenta has been made to pay $3,000,000 purchase price for a company that is only worth $1.9 million;

c)  Spenta has incurred accounting, legal and other professional fees in association with disputing and attempting to collect from Chizuco for this disputed balance sheet amounts;

d)  Spenta had incurred fees and court costs to support Chizuco's failed vacation policy;

e)  Spenta has had to pay three former employees accrued vacation monies due from Chizuco;

f)  Spenta has had to make a special accrual for accrued vacation without repayment from Chizuco;

g)  Spenta has spent considerable time and incurred considerable expense to attempt a remedy to the Profit Sharing /401(k) Plan, and Chizuco has refused  to consider, or pay for, this remedy;

h)  Recently, Spenta has undergone a Profit Sharing/401k audit by the IRS, which is seeking. written waivers from the employees who allegedly did not want to join the Plan,  which have never been produced by, and Spenta is waiting for IRS action; .

i)  Spenta has incurred expenses and officer time because of the need to work considerable hours in reconstructing employee files because none existed;

j)  Spenta has incurred interest on the Note to Chizuco of approximately $41,000 and has paid interest of approximately $88,000 for a loan to pay Accounts Payable, accrued expenses and other items of damages attributable to Chizuco; and

k)   Spenta has spent, and will spend large amounts for their attorneys' fees, accountants' fees and costs.

128.    Robert and Chizuco are jointly and severally liable for Plaintiffs' damages in an amount in excess of $1,300,000.

129.     Robert and Chizuco's actions are egregious and willful, and Plaintiffs are entitled to an award of punitive damages in excess of $5,000,000.

**WHEREFORE,** Plaintiff Spenta Enterprises, Ltd. prays that this Honorable Court enter judgment in its favor on this Count VI against the Defendants Robert Coleman and Chizuco Coleman, jointly and severally, in the amount of $1,200,000, punitive damages in excess of $5,000,000, and award of attorneys' fees, and the costs of this litigation, and such and other further relief this Court deems just.

## Count VII

### Breach of Contract (Non-Compete Agreement)
### Against Defendant Robert Coleman

130.     Plaintiffs incorporate the allegations of Paragraphs 1 to 129 inclusive as Paragraph 130 of this Count VII as if set forth fully herein.

131.     The Plaintiffs executed a "Confidential Information and Noncompetition Agreement" with Defendant Robert in connection with the purchase of the Company. *See* Attached Exhibit C ("Robert Agreement").

132.     In the Robert Agreement, Robert promised that he would not interfere with the business, would not hire or solicit Company employees, would not disparage the Company, and would not contact or talk to customers, employees and vendors of the business.

133.     The Robert Agreement executed by and between the Plaintiffs and Robert was a legal and binding contract between them.

134.     Good and valuable consideration for the Robert Agreement and the promises and obligations contained therein was given and received by and between the Plaintiffs and Robert.

135.    In violation of the express promises and obligations made by Robert in the Robert Agreement, Robert has breached that agreement by engaging in the following actions, including but not limited to:

a)  Contacted employees of the Company and told them that the Company will be out of business in one year;

b)  Contacted suppliers of the Company to disparage the Company;

c)  Contacted a competitor of Spenta to try to have that competitor hire a key employee of the Company; and

d)  Contacted customers and vendors of the Company to disparage the Company.

136.    Due to the breaches of the Agreement by Robert as set forth above, Plaintiffs have been damaged in that they:

a)  Suppliers have balked at extending credit to the Company;

b)  The reputation of the Company has been damaged among potential customers;

c)  Employees have left employment with the Company; and

d)  the Company has lost jobs, incurred difficulty obtaining bonds, and been harmed in its business.

137.    The Robert Agreement also provided for equitable injunctive relief against Robert in the event of any breach of the Robert Agreement.  *See* Para. 4(a).

138.    The Robert Agreement also provided for an award of attorneys' fees and costs to the prevailing party in the event of any breach of the Robert Agreement.  *See* Para. 4(a).

**WHEREFORE,** Plaintiff Spenta Enterprises, Ltd. prays that this Honorable Court enter judgment in its favor on this Count VII against the Defendant Robert Coleman, as follows:

a)     Issuing of an injunction prohibiting Robert from interfering with the business, and requiring him to refrain from disparaging the Company, enjoin him from contacting any and all customers, employees and vendors of the business.

b)     Enter an award of money damages in the amount of $100,000.00;

c)    Enter an award of attorneys' fees and the costs of this litigation;

d)    Grant such and other further relief this Court deems just.

## Count VIII

### Breach of Contract (Non-Compete Agreement)
### Against Defendant Chizuco Coleman

139.    Plaintiffs incorporate the allegations of Paragraphs 1 to 138 inclusive as Paragraph 139 of this Count VIII as if set forth fully herein.

140.    The Plaintiffs executed a "Confidential Information and Noncompetition Agreement" with Defendant Chizuco in connection with the purchase of the Company.  *See* Attached Exhibit D ("Chizuco Agreement").

141.    In the Chizuco Agreement, Chizuco promised that she would not interfere with the business, would not hire or solicit Company employees, would not disparage the Company, and would not contact or talk to customers, employees and vendors of the business.

142.    The Chizuco Agreement executed by and between the Plaintiffs and Chizuco was a legal and binding contract between them.

143.    Good and valuable consideration for the Chizuco Agreement and the promises and obligations contained therein was given and received by and between Plaintiffs and Chizuco.

144.    In violation of the express promises and obligations made by Chizuco in the Chizuco Agreement, Chizuco has breached that agreement by engaging in the following actions, including but not limited to:

a)  Contacted employees of the Company and told them that the Company will be out of business in one year;

b)  Contacted suppliers of the Company to disparage the Company;

c)  Contacted a competitor of Spenta to try to have that competitor hire a key employee of the Company; and

d)  Contacted customers and vendors of the Company to disparage the Company.

145.    Due to the breaches of the Chizuco Agreement by Chizuco as set forth above, Plaintiffs have been damaged in that they:

a)  Suppliers have balked at extending credit to the Company;

b)  The reputation of the Company has been damaged among potential customers;

c)  Employees have left employment with the Company; and

d)  the Company has lost jobs, incurred difficulty obtaining bonds, and been harmed in its business.

146.    The Chizuco Agreement also provided for equitable injunctive relief against Chizuco in the event of any breach of the Chizuco Agreement.  *See* Para. 4(a).

147.    The Chizuco Agreement also provided for an award of attorneys' fees and costs to the prevailing party in the event of any breach of the Chizuco Agreement.  *See* Para. 4(a).

**WHEREFORE,** Plaintiff Spenta Enterprises, Ltd. prays that this Honorable Court enter judgment in its favor on this Count VII against the Defendant Chizuco Coleman, as follows:

**a)**    Issuing of an injunction prohibiting Robert from interfering with the business, and requiring him to refrain from disparaging the Company, enjoin him from contacting any and all customers, employees and vendors of the business.

b)    Enter an award of money damages in the amount of $100,000.00;

c)    Enter an award of attorneys' fees and the costs of this litigation;

d)    Grant such other and further relief this Court deems just.

## Count IX

### Declaration of Rights/Injunctive Relief
### Against Defendant Chizuco Coleman

148.    Plaintiffs incorporate the allegations of Paragraphs 1 to 147 inclusive as Paragraph 148 of this Count IX as if set forth fully herein.

149.    Plaintiff Spenta executed an "Installment Promissory Note" with Defendant Chizuco in connection with the purchase of the Company.  *See* Attached Exhibit E ("The Note").

150.    In the Note, Spenta agreed to pay to Chizuco $800,000.00, which represented the balance of the Purchase Price.

151.     Karani personally guaranteed the payment of the Note via a written Guaranty. *See* Exhibit B.

152.    The installments payments on the Note were to be paid monthly, on the 27th day of every month following October 27, 2006, for sixty (60) months.  *See* Exhibit E, Note, Para. 2.1.

153.    The monthly installment payments are $9,706.21 under the Note.  *Id.*

154.    Since November 2006, Plaintiffs have made every installment payment under the Note, and at this time there remains a balance of about $700,000.  In addition, Plaintiffs have paid about $41,000 interest on the Note.

155.    In the Agreement, Spenta and Chizuco agreed that in the event of a breach of the Agreement, that the installment payments could be setoff, suspended and/or escrowed.  Specifically, in the Agreement, Section 8.8 provided that:

> Purchaser shall be entitled to off set against amounts due Seller hereunder or under any agreement delivered in connection with the Transaction including but not limited to the Note, any Losses (an "Offset Amount").  In addition, Purchaser may suspend payment of any amount otherwise payable under the Note upon and after the date of any Notice of Claim under Section 8.4

*See* Agreement, Section 8.8.

156.    At this time, Chizuco had breached the Agreement as set forth in Counts I through V and VIII above.

157.    Plaintiffs' losses from Chizuco's various breaches of Agreement exceed the amount still owed to Chizuco under the Note by at least $350,000.

158.    Plaintiffs seek a declaration of rights under the Note and under the Agreement by this Court that their obligation to make any further payments under the Note is suspended.

**WHEREFORE,** Plaintiffs Spenta Enterprises, Ltd. and Hoshang R. Karani, pray that this Honorable Court enter judgment in its favor on this Count IX against the Defendant Chizuco Coleman, as follows:

a)  the issuing of an order declaring the rights of Plaintiffs under the Note and the Agreement concerning the ongoing payment of installment payments under the Note;

b)  the issuing of an order declaring the rights of Karani under the Note, the Guaranty and the Agreement concerning the ongoing payment of installment payments under the Note;

c)  award Spenta a Judgment for interest paid to Chizuco;

d)  an award of the costs of this litigation;

e)  such other and further relief as this Court deems just.

Respectfully submitted,

Plaintiffs Spenta Industries, Ltd. and
Hoshang R. Karani


S/  Ralph C. Hardesty
Their Attorney

Ralph C. Hardesty
Hardesty & Associates
55 W. Monroe Street
Suite 3720
Chicago, IL 60603
312-346-0045
Attorney No. 6184066