08 C 495

JUDGE GETTLEMAN
MAGISTRATE JUDGE COLE

# EXHIBIT B

## GUARANTY

This GUARANTY, dated as of September 27, 2006 (as from time to time amended, modified or supplemented in accordance with the terms hereof, ("**Guaranty**"), is made by HOSHANG R. KARANI (together with his successors and assigns, the "**Guarantor**") in favor of CHIZUCO COLEMAN ("Lender").

## RECITALS

A.     SPENTA ENTERPRISES LTD., an Illinois corporation ("**Borrower**"), Guarantor, Lender, and COLEMAN FIRE PROOF DOOR CO., an Illinois corporation (the "**Company**") entered into a Stock Purchase Agreement of even date herewith ("**Purchase Agreement**").

B.     Pursuant to the terms of the Purchase Agreement, Borrower has executed a Promissory Note of even date herewith (as amended, amended and restated or otherwise modified from time to time, the "Note") payable to the order of Lender.

C.     The Guarantor is a shareholder of the Borrower and will benefit from the transactions contemplated by the Purchase Agreement and is desirous of having Lender extend the extension of credit to Borrower. Lender has required that Guarantor execute and deliver this Guaranty to Lender as a condition to the extension of credit by Lender.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, Guarantor hereby agrees as follows:

1.     **Guaranty.**  Guarantor hereby unconditionally and irrevocably guaranties to Lender, the punctual payment and performance when due, whether at stated maturity or by acceleration or otherwise, of the Loan (as defined below) and other obligations of Borrower to Lender evidenced by the Note and any other amounts that may become owing by Borrower under the Note (such indebtedness, obligations and other amounts are hereinafter referred to as the "**Payment Obligations**"). This Guaranty is a present and continuing guaranty of payment and not of collectibility, and Lender shall not be required to prosecute collection, enforcement or other remedies against Borrower or any other guarantor of the Payment Obligations, or to enforce or resort to any collateral for the repayment of the Payment Obligations or other rights or remedies pertaining thereto, before calling on Guarantor for payment. If for any reason Borrower shall fail or be unable to pay, punctually and fully, any of the Payment Obligations, Guarantor shall pay such obligations to Lender in full immediately upon demand. One or more successive actions may be brought against Guarantor, as often as Lender deems advisable, until all of the Payment Obligations are paid and performed in full. The Payment Obligations together with all other payment and performance obligations of Guarantor hereunder are referred to herein as "**Borrower's Obligations.**"

2.     **Representations and Warranties.** The following shall constitute representations and warranties of Guarantor and Guarantor hereby acknowledges that Lender intends to make the loan of funds to Borrower (the "Loan") in reliance thereon:



EXHIBIT
B

651553.2.10813.31763

2.1    Guarantor is not in default and no event has occurred that with the passage of time and/or the giving of notice will constitute a default under any agreement to which Guarantor is a party, the effect of which will impair performance by Guarantor of his obligations under this Guaranty. Neither the execution and delivery of this Guaranty nor compliance with the terms and provisions hereof will violate any applicable law, rule, regulation, judgment, decree or order, or will conflict with or result in any breach of any of the terms, covenants, conditions or provisions of any indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind that creates, represents, evidences or provides for any lien, charge or encumbrance upon any of the property or assets of Guarantor, or any other indenture, mortgage, deed of trust, instrument, document, agreement or contract of any kind to which Guarantor is a party or to which Guarantor or the property of Guarantor may be subject.

2.2    There is not any litigation, arbitration, governmental or administrative proceedings, actions, examinations, claims or demands pending, or to Guarantor's knowledge, threatened that could adversely affect performance by Guarantor of his obligations under this Guaranty.

2.3    Neither this Guaranty nor any statement or certification as to facts previously furnished or required herein to be furnished to Lender by Guarantor, contains any material inaccuracy or untruth in any representation, covenant or warranty or omits to state a fact material to this Guaranty.

3.    **Continuing Guaranty.** Guarantor agrees that performance of the Borrower's Obligations by Guarantor shall be a primary obligation, shall not be subject to any counterclaim, set-off, abatement, deferment or defense based upon any claim that Guarantor may have against Lender, Borrower, any other guarantor of the Borrower's Obligations or any other person or entity, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by, any circumstance or condition (whether or not Guarantor shall have any knowledge thereof), including, without limitation:

3.1    Any lack of validity or enforceability of the Note;

3.2    Any termination, amendment, modification or other change in the Note, including, without limitation, any modification of the interest rate(s) described therein;

3.3    Any furnishing, exchange, substitution or release of any collateral securing repayment of the Loan, or any failure to perfect any lien in such collateral;

3.4    Any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the Borrower's Obligations or Lender to conform or comply with any term of the Note;

3.5    Any waiver, compromise, release, settlement or extension of time of payment or performance or observance of any of the obligations or agreements contained in the Note;

3.6    Any action or inaction by Lender under or in respect of the Note, any failure, lack of diligence, omission or delay on the part of Lender to perfect, enforce, assert or

2

exercise any lien, security interest, right, power or remedy conferred on it in the Note or the Purchase Agreement, or any other action or inaction on the part of Lender;

3.7    Any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshalling of assets and liabilities or similar events or proceedings with respect to Borrower, Guarantor or any other guarantor of the Borrower's Obligations, as applicable, or any of their respective property or creditors, or any action taken by any trustee or receiver or by any court in any such proceeding;

3.8    Any merger or consolidation of Borrower into or with any entity, or any sale, lease or transfer of any of the assets of Borrower, Guarantor or any other guarantor of the Borrower's Obligations to any other person or entity;

3.9    Any change in the ownership of Borrower or any change in the relationship between Borrower, Guarantor or any other guarantor of the Borrower's Obligations, or any termination of any such relationship;

3.10    Any release or discharge by operation of law of Borrower, Guarantor or any other guarantor of the Borrower's Obligations from any obligation or agreement contained in the Note; or

3.11    Any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing and whether foreseen or unforeseen, which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or Guarantor to the fullest extent permitted by law.

4.    **Waivers.**  Guarantor expressly and unconditionally waives (i) notice of any of the matters referred to in Section 3 above, (ii) all notices which may be required by statute, rule of law or otherwise, now or hereafter in effect, to preserve intact any rights against Guarantor, including, without limitation, any demand, presentment and protest, proof of notice of non-payment under the Note and notice of any Event of Default, as defined in the Note, or any failure on the part of Borrower, Guarantor or any other guarantor of the Borrower's Obligations to perform or comply with any covenant, agreement, term or condition of the Note, (iii) any right to the enforcement, assertion or exercise against Borrower, Guarantor or any other guarantor of the Borrower's Obligations of any right or remedy conferred under the Note, (iv) any requirement of diligence on the part of any person or entity, (v) to the fullest extent permitted by law and except as otherwise expressly provided in this Guaranty or the Note, any claims based on allegations that Lender has failed to act in a commercially reasonable manner or failed to exercise Lender's so-called obligation of good faith and fair dealing, (vi) any requirement to exhaust any remedies or to mitigate the damages resulting from any default under the Note, and (vii) any notice of any sale, transfer or other disposition of any right, title or interest of Lender under the Note.

5.    **Subordination.**  Guarantor agrees that any and all present and future debts and obligations of Borrower to Guarantor hereby are subordinated to the claims of Lender and hereby

3

are assigned by Guarantor to Lender as security for the Borrower's Obligations and Guarantor's obligations under this Guaranty.

6.    **Subrogation Waiver.**  Until the Borrower's Obligations are paid in full and all periods under applicable bankruptcy law for the contest of any payment by Guarantor or Borrower as a preferential or fraudulent payment have expired, Guarantor knowingly, and with advice of counsel, waives, relinquishes, releases and abandons all rights and claims to indemnification, contribution, reimbursement, subrogation and payment which Guarantor may now or hereafter have by and from Borrower and the successors and assigns of Borrower, for any payments made by Guarantor to Lender, including, without limitation, any rights which might allow Borrower, Borrower's successors, a creditor of Borrower, or a trustee in bankruptcy of Borrower to claim in bankruptcy or any other similar proceedings that any payment made by Borrower or Borrower's successors and assigns to Lender was on behalf of or for the benefit of Guarantor and that such payment is recoverable by Borrower, a creditor or trustee in bankruptcy of Borrower as a preferential payment, fraudulent conveyance, payment of an insider or any other classification of payment which may otherwise be recoverable from Lender.

7.    **Reinstatement.**  The obligations of Guarantor pursuant to this Guaranty shall continue to be effective or automatically be reinstated, as the case may be, if at any time payment of any of the Borrower's Obligations or Guarantor's obligations under this Guaranty is rescinded or otherwise must be restored or returned by Lender upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Guarantor or Borrower or otherwise, all as though such payment had not been made.

8.    **Enforcement Costs.**  If (i) this Guaranty, is placed in the hands of one or more attorneys for collection or is collected through any legal proceeding; (ii) one or more attorneys is retained to represent Lender in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Guaranty, or (iii) one or more attorneys is retained to represent Lender in any other proceedings whatsoever in connection with this Guaranty, then Guarantor shall pay to Lender upon demand all fees, costs and expenses incurred by Lender in connection therewith, including, without limitation, reasonable attorneys' fees, court costs and filing fees (all of which are referred to herein as **"Enforcement Costs"**), in addition to all other amounts due hereunder.

9.    **Successors and Assigns.**  This Guaranty shall inure to the benefit of Lender and her successors and assigns.  This Guaranty shall be binding on Guarantor and the heirs and legatees of Guarantor.  Regardless of whether this Guaranty is executed by more than one person, it is agreed that the undersigned's liability hereunder is several and independent of any other guarantees or other obligations at any time in effect with respect to the Borrower's Obligations or any part thereof and that Guarantor's liability hereunder may be enforced regardless of the existence, validity, enforcement or non-enforcement of any such other guarantees or other obligations.

10.    **No Waiver of Rights**.  No delay or failure on the part of Lender to exercise any right, power or privilege under this Guaranty or the Note shall operate as a waiver thereof, and no single or partial exercise of any right, power or privilege shall preclude any other or further exercise thereof or the exercise of any other power or right, or be deemed to establish a custom

or course of dealing or performance between the parties hereto. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law. No notice to or demand on Guarantor in any case shall entitle Guarantor to any other or further notice or demand in the same, similar or other circumstance.

11.    **Modification.**    The terms of this Guaranty may be waived, discharged or terminated only by an instrument in writing signed by the party against which enforcement of the change, waiver, discharge or termination is sought. No amendment, modification, waiver or other change of any of the terms of this Guaranty shall be effective without the prior written consent of Lender.

12.    **Joinder.**    Any action to enforce this Guaranty may be brought against Guarantor without any reimbursement or joinder of Borrower or any other guarantor of the Borrower's Obligations in such action.

13.    **Severability.**    If any provision of this Guaranty is deemed to be invalid by reason of the operation of law, or by reason of the interpretation placed thereon by any administrative agency or any court, Guarantor and Lender shall negotiate an equitable adjustment in the provisions of the same in order to effect, to the maximum extent permitted by law, the purpose of this Guaranty and the validity and enforceability of the remaining provisions, or portions or applications thereof, shall not be affected thereby and shall remain in full force and effect.

14.    **Applicable Law.**    This Guaranty is governed as to validity, interpretation, effect and in all other respects by laws and decisions of the State of Illinois.

15.    **Notice.**    All notices, communications and waivers under this Guaranty shall be in writing and shall be (i) delivered in person, or (ii) mailed, postage prepaid, either by registered or certified mail, return receipt requested, or (iii) by overnight express carrier, addressed in each case as follows:

|  |  |
|---|---|
| If to Lender: | Chicuzo Coleman<br>N9110 11th Drive<br>Westfield, WI 53964 |
| If to Guarantor: | Hoshang R. Karani<br><br>_____<br>_____<br>_____ |

or to any other address as to any of the parties hereto, as such party shall designate in a written notice to the other party hereto. All notices sent pursuant to the terms of this Section shall be deemed received (i) if personally delivered, then on the date of delivery, (ii) if sent by overnight, express carrier, then on the next federal banking day immediately following the day sent, or (iii) if sent by registered or certified mail, then on the earlier of the third federal banking day following the day sent or when actually received.

5

16.   **CONSENT TO JURISDICTION.**   TO INDUCE LENDER TO ACCEPT THIS GUARANTY, GUARANTOR IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS GUARANTY WILL BE LITIGATED IN COURTS HAVING SITUS IN LAKE COUNTY, ILLINOIS. GUARANTOR HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN LAKE COUNTY, ILLINOIS, WAIVES PERSONAL SERVICE OF PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY REGISTERED MAIL DIRECTED TO GUARANTOR AT THE ADDRESS STATED HEREIN AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

17.   **WAIVER OF JURY TRIAL.**   GUARANTOR AND LENDER (BY ACCEPTANCE HEREOF), HAVING BEEN REPRESENTED BY COUNSEL, EACH KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS GUARANTY OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH AND AGREES THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.   GUARANTOR AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

[The balance of this page intentionally left blank.]

IN WITNESS WHEREOF, Guarantor has executed this Guaranty as of the date first above written.

_____
Hoshang R. Karani

7

# EXHIBIT C

## CONFIDENTIAL INFORMATION AND
## NONCOMPETITION AGREEMENT

**THIS CONFIDENTIAL INFORMATION AND NONCOMPETITION AGREEMENT** (this "**Agreement**") is made and entered into as of this 27th day of September, 2006, by and between Robert Coleman, Jr. ("Coleman") and **SPENTA ENTERPRISES LTD**, an Illinois corporation ("**Buyer**"). Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement (as defined below).

### RECITALS:

**WHEREAS,** Buyer has entered into a Stock Purchase Agreement (the "**Purchase Agreement**") dated September___, 2006, by and among Coleman Fire Proof Door Co., an Illinois corporation ("Company"), and Chizuco Coleman, the sole shareholder (the "Shareholder") of the Company (the "Company" and the "Shareholder" are herein collectively referred to as the "Selling Parties"); and

**WHEREAS,** pursuant to the terms and conditions of the Purchase Agreement, Buyer has agreed to purchase 100% of the issued and outstanding capital stock of the Company from the Shareholder (the "Stock"); and

**WHEREAS,** Coleman is an employee of the Company, and has been for many years, and is intimately familiar with the trade secrets and confidential proprietary information relating to the Business including, without limitation, personnel information, production, manufacturing, distribution, sourcing and marketing information, customer and supplier lists and related information; and

**WHEREAS,** Coleman will benefit from the sale of the Stock as contemplated by the Purchase Agreement; and

**WHEREAS,** it is a condition to Buyer's obligations under the Purchase Agreement that Coleman shall have executed and delivered this Agreement at Closing; and

**WHEREAS,** the covenants provided herein are material, significant and essential to effecting the transactions contemplated by the Purchase Agreement, and good and valuable consideration under the Purchase Agreement has been transferred from Buyer under the Purchase Agreement in exchange for such covenants; and

**WHEREAS,** Buyer would not agree to purchase the Stock unless Coleman executed this Agreement, and the execution of this Agreement by Coleman is a material inducement to Buyer's purchasing of the Stock pursuant to the Purchase Agreement.

**NOW, THEREFORE,** for value received, and in connection with the Purchase Agreement and in consideration of the mutual promises contained therein, the parties agree as follows:



**EXHIBIT**
_C_

673332_3

1.   **Recitals.** The recital paragraphs hereinabove set forth are true and correct and are incorporated herein by reference and made a part hereof.

2.   **Non-Compete/Non-Solicitation.**

(a)    From the date of this Agreement until the fifth (5th) anniversary of the date of this Agreement (the "**Term**"), Coleman shall not, and shall not permit any Affiliate of his, anywhere within the United States, or in any other country in which the Business was conducted during the last two years or in which the Business is conducted by Buyer, its Affiliates, transferees or successors during the Term (the "**Restricted Territory**"), directly or indirectly, whether as sole proprietor, partner, venturer, stockholder, director, officer, manager, member, guarantor, employee, consultant, independent contractor, or in any other capacity as principal or agent or through any person, subsidiary, affiliate or employee acting as nominee or agent, engage in any of the following actions:

(i)    Own, operate, invest in, manage, control, perform services for, conduct or engage in, or be interested in or associated with, any person or entity which conducts or engages in any business or commercial activities which is similar to or competitive with the Business, at any time during the Term.

(ii)    Except as otherwise requested by Buyer, solicit, hire, accept business or leads from, call on or contact or accept calls or contact from, any past (within the last 24 months), present or prospective employees, customers, suppliers, agents or independent contractors of the Buyer or Seller with respect to the Business, or encourage any such person or entity to terminate or alter in any material respect any relationship that such person or entity has with respect to the Business.

(b)    Notwithstanding anything contained in this Section 2, the ownership of securities of any company owning or operating a business referred to above, is permitted if such securities are publicly traded on a national securities market and constitute less than one percent (1%) of the outstanding stock thereof and do not constitute control over such company.

3.   **Confidentiality.**   At all times from and after the date hereof, without being limited to the Term or Restricted Territory applicable to the covenants contained in Section 2 hereof, Coleman shall not use for his own benefit or for the benefit of others, or divulge to others, any information, trade secrets, knowledge or data of a secret or confidential nature or otherwise not readily available to members of the general public which concerns the operations or affairs of the Business.

4.   **Remedies, Reformation and Severability.**

(a)    Coleman agrees that in the event that he (or any of his Affiliates or other named persons in said sections) commits a breach of any of the provisions of Section 2 or Section 3 hereof, Buyer shall have all rights and remedies available to it at law or in equity, including without limitation the right and remedy to have the provisions of

Section 2 or Section 3 specifically enforced to the extent permitted by law by any court having jurisdiction, and Buyer shall be entitled to immediate injunctive relieve (without any bond or other security being required), it being acknowledged and agreed that any such breach or threatened breach will cause immediate irreparable injury to Buyer and that money damages will not provide an adequate remedy at law for any such breach or threatened breach. Such right and remedy shall be in addition to, and not in lieu of, any other rights and remedies available to Buyer at law or in equity. Coleman acknowledges that the temporal and geographic scope of the covenants set forth in this Agreement are reasonable in light of the potential harm any breach thereof could cause Buyer.

(b)    If any of the provisions of or covenants contained in Sections 2 and 3 are hereafter construed to be invalid or unenforceable in any jurisdiction, the same shall not effect the remainder of the provisions or the enforceability thereof in any other jurisdiction, which shall be given full effect, without regard to the invalid portions or to the unenforceability of such provisions in such other jurisdiction. If any of the provisions of or covenants contained in Sections 2 and 3 hereof are held to be unenforceable in any jurisdiction because of the duration or scope thereof, the parties agree that the court making such determination shall have the power to reduce the duration and/or scope of such provision or covenant and, in its reduced form, said provision or covenant shall be enforceable; provided, however, that the determination of such court shall not affect the enforceability or scope of the covenants contained in Sections 2 or 3 in any other jurisdiction.

(c)    In the event of any violation, breach or necessity to enforce the provisions of Sections 2 and/or 3 hereof, the prevailing party shall be entitled to prompt reimbursement from the non-prevailing party of all of its court costs, expert witness fees and costs, accountants fees and costs, and reasonable attorneys' fees and costs.

5.    **No Additional Payment Required**. Coleman acknowledges and agrees that the payment of the Purchase Price and the assumption of certain of Seller's liabilities pursuant to the terms of the Purchase Agreement, constitute sufficient and adequate consideration and that no additional or independent consideration is necessary for the execution, delivery and performance of this Agreement.

6.    **Amendment**. This Agreement cannot be changed, modified or discharged orally, but only by an Agreement in writing signed by all parties hereto.

7.    **Waiver**. Failure to insist upon strict compliance with any of the terms, covenants or conditions hereof shall not be deemed a waiver of such term, covenant or condition, nor shall any waiver or relinquishment of any right or power hereunder at any one or more times be deemed a waiver or relinquishment of such right or power.

8.    **Governing Law and Forum**. This Agreement is executed in the State of Illinois and shall be construed and enforced in accordance with the laws of that state. All parties agree and consent that all disputes, claims and controversies hereunder and interpretation hereof shall be brought in the exclusive forum of the federal or state courts of Illinois.

9.   **Entire Agreement; Amendments**.   This Agreement contains the entire understanding of the parties hereto with regard to the subject matter contained herein, and supersedes all prior agreements, understandings or intents between or among any of the parties.

10.   **Headings**.   The headings of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute part of this Agreement or to affect the construction thereof.

11.   **Notices**.   All notices permitted or required under this Agreement shall be delivered in accordance with the notice provisions contained in the Purchase Agreement.

12.   **Affiliates, Successors and Assigns**.   The obligations and restrictive covenants of Coleman hereunder may be assigned to any successor or assign of Buyer.  This Agreement shall be binding upon and inure to the benefit of Buyer and Buyer's Affiliates, successors and assigns.

13.   **No Strict Construction**.   The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict constructions shall be applied against any person.

14.   **Acknowledgment**.   Coleman affirms that he has read this Agreement in its entirety, understands the nature of his obligations hereunder, has received the advice of independent counsel with respect to the terms and conditions hereof, and agrees to abide by all the terms and provisions herein set forth.

**IN WITNESS WHEREOF**, this Confidential Information and Non Competition Agreement has been executed and accepted as of the date first stated above.

Robert Coleman, Jr.

**BUYER:**

**SPENTA ENTERPRISES LTD.**

By: _____

Its President / CEO

673332-3                                        4

# EXHIBIT D

# CONFIDENTIAL INFORMATION AND
# NONCOMPETITION AGREEMENT

**THIS CONFIDENTIAL INFORMATION AND NONCOMPETITION AGREEMENT** (this "**Agreement**") is made and entered into as of this _27th_ day of September, 2006, by and between Chizuco Coleman ("Coleman") and **SPENTA ENTERPRISES LTD**, an Illinois corporation ("**Buyer**"). Capitalized terms used herein and not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement (as defined below).

## RECITALS:

**WHEREAS**, Buyer has entered into a Stock Purchase Agreement (the "**Purchase Agreement**") dated September__, 2006, by and among Coleman Fire Proof Door Co., an Illinois corporation ("Company"), and Chizuco Coleman, the sole shareholder (the "Shareholder") of the Company (the "Company" and the "Shareholder" are herein collectively referred to as the "Selling Parties"); and

**WHEREAS**, pursuant to the terms and conditions of the Purchase Agreement, Buyer has agreed to purchase 100% of the issued and outstanding capital stock of the Company from the Shareholder (the "Stock"); and

**WHEREAS**, Coleman is an employee of the Company, and has been for many years, and is intimately familiar with the trade secrets and confidential proprietary information relating to the Business including, without limitation, personnel information, production, manufacturing, distribution, sourcing and marketing information, customer and supplier lists and related information; and

**WHEREAS**, Coleman will benefit from the sale of the Stock as contemplated by the Purchase Agreement; and

**WHEREAS**, it is a condition to Buyer's obligations under the Purchase Agreement that Coleman shall have executed and delivered this Agreement at Closing; and

**WHEREAS**, the covenants provided herein are material, significant and essential to effecting the transactions contemplated by the Purchase Agreement, and good and valuable consideration under the Purchase Agreement has been transferred from Buyer under the Purchase Agreement in exchange for such covenants; and

**WHEREAS**, Buyer would not agree to purchase the Stock unless Coleman executed this Agreement, and the execution of this Agreement by Coleman is a material inducement to Buyer's purchasing of the Stock pursuant to the Purchase Agreement.

**NOW, THEREFORE**, for value received, and in connection with the Purchase Agreement and in consideration of the mutual promises contained therein, the parties agree as follows:

**EXHIBIT**

**D**

673772_1

1.    **Recitals**.  The recital paragraphs hereinabove set forth are true and correct and are incorporated herein by reference and made a part hereof.

2.    **Non-Compete/Non-Solicitation.**

(a)    From the date of this Agreement until the fifth (5th) anniversary of the date of this Agreement (the "**Term**"), Coleman shall not, and shall not permit any Affiliate of hers, anywhere within the United States, or in any other country in which the Business was conducted during the last two years or in which the Business is conducted by Buyer, its Affiliates, transferees or successors during the Term (the "**Restricted Territory**"), directly or indirectly, whether as sole proprietor, partner, venturer, stockholder, director, officer, manager, member, guarantor, employee, consultant, independent contractor, or in any other capacity as principal or agent or through any person, subsidiary, affiliate or employee acting as nominee or agent, engage in any of the following actions:

(i)    Own, operate, invest in, manage, control, perform services for, conduct or engage in, or be interested in or associated with, any person or entity which conducts or engages in any business or commercial activities which is similar to or competitive with the Business, at any time during the Term.

(ii)    Except as otherwise requested by Buyer, solicit, hire, accept business or leads from, call on or contact or accept calls or contact from, any past (within the last 24 months), present or prospective employees, customers, suppliers, agents or independent contractors of the Buyer or Seller with respect to the Business, or encourage any such person or entity to terminate or alter in any material respect any relationship that such person or entity has with respect to the Business.

(b)    Notwithstanding anything contained in this Section 2, the ownership of securities of any company owning or operating a business referred to above, is permitted if such securities are publicly traded on a national securities market and constitute less than one percent (1%) of the outstanding stock thereof and do not constitute control over such company.

3.    **Confidentiality**.  At all times from and after the date hereof, without being limited to the Term or Restricted Territory applicable to the covenants contained in Section 2 hereof, Coleman shall not use for her own benefit or for the benefit of others, or divulge to others, any information, trade secrets, knowledge or data of a secret or confidential nature or otherwise not readily available to members of the general public which concerns the operations or affairs of the Business.

4.    **Remedies, Reformation and Severability**.

(a)    Coleman agrees that in the event that she (or any of her Affiliates or other named persons in said sections) commits a breach of any of the provisions of Section 2 or Section 3 hereof, Buyer shall have all rights and remedies available to it at law or in equity, including without limitation the right and remedy to have the provisions of

673772-1                                                    2

Section 2 or Section 3 specifically enforced to the extent permitted by law by any court having jurisdiction, and Buyer shall be entitled to immediate injunctive relieve (without any bond or other security being required), it being acknowledged and agreed that any such breach or threatened breach will cause immediate irreparable injury to Buyer and that money damages will not provide an adequate remedy at law for any such breach or threatened breach. Such right and remedy shall be in addition to, and not in lieu of, any other rights and remedies available to Buyer at law or in equity. Coleman acknowledges that the temporal and geographic scope of the covenants set forth in this Agreement are reasonable in light of the potential harm any breach thereof could cause Buyer.

(b)    If any of the provisions of or covenants contained in Sections 2 and 3 are hereafter construed to be invalid or unenforceable in any jurisdiction, the same shall not effect the remainder of the provisions or the enforceability thereof in any other jurisdiction, which shall be given full effect, without regard to the invalid portions or to the unenforceability of such provisions in such other jurisdiction. If any of the provisions of or covenants contained in Sections 2 and 3 hereof are held to be unenforceable in any jurisdiction because of the duration or scope thereof, the parties agree that the court making such determination shall have the power to reduce the duration and/or scope of such provision or covenant and, in its reduced form, said provision or covenant shall be enforceable; provided, however, that the determination of such court shall not affect the enforceability or scope of the covenants contained in Sections 2 or 3 in any other jurisdiction.

(c)    In the event of any violation, breach or necessity to enforce the provisions of Sections 2 and/or 3 hereof, the prevailing party shall be entitled to prompt reimbursement from the non-prevailing party of all of its court costs, expert witness fees and costs, accountants fees and costs, and reasonable attorneys' fees and costs.

5.    **No Additional Payment Required**.  Coleman acknowledges and agrees that the payment of the Purchase Price and the assumption of certain of Seller's liabilities pursuant to the terms of the Purchase Agreement, constitute sufficient and adequate consideration and that no additional or independent consideration is necessary for the execution, delivery and performance of this Agreement.

6.    **Amendment**.  This Agreement cannot be changed, modified or discharged orally, but only by an Agreement in writing signed by all parties hereto.

7.    **Waiver**.  Failure to insist upon strict compliance with any of the terms, covenants or conditions hereof shall not be deemed a waiver of such term, covenant or condition, nor shall any waiver or relinquishment of any right or power hereunder at any one or more times be deemed a waiver or relinquishment of such right or power.

8.    **Governing Law and Forum**.  This Agreement is executed in the State of Illinois and shall be construed and enforced in accordance with the laws of that state.  All parties agree and consent that all disputes, claims and controversies hereunder and interpretation hereof shall be brought in the exclusive forum of the federal or state courts of Illinois.

9. **Entire Agreement; Amendments**. This Agreement contains the entire understanding of the parties hereto with regard to the subject matter contained herein, and supersedes all prior agreements, understandings or intents between or among any of the parties.

10. **Headings**. The headings of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute part of this Agreement or to affect the construction thereof.

11. **Notices**. All notices permitted or required under this Agreement shall be delivered in accordance with the notice provisions contained in the Purchase Agreement.

12. **Affiliates, Successors and Assigns**. The obligations and restrictive covenants of Coleman hereunder may be assigned to any successor or assign of Buyer. This Agreement shall be binding upon and inure to the benefit of Buyer and Buyer's Affiliates, successors and assigns.

13. **No Strict Construction**. The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent, and no rule of strict constructions shall be applied against any person.

14. **Acknowledgment**. Coleman affirms that she has read this Agreement in its entirety, understands the nature of her obligations hereunder, has received the advice of independent counsel with respect to the terms and conditions hereof, and agrees to abide by all the terms and provisions herein set forth.

**IN WITNESS WHEREOF**, this Confidential Information and Non Competition Agreement has been executed and accepted as of the date first stated above.

_____
Chizuco Coleman

BUYER:

SPENTA ENTERPRISES LTD.

By: _____
Its President / CEO

673772-1                              4

# EXHIBIT E

## INSTALLMENT PROMISSORY NOTE                COPY

**$800,000.00**

Chicago, Illinois
September 27, 2006

1.      **AGREEMENT TO PAY.** FOR VALUE RECEIVED, SPENTA ENTERPRISES LTD.,
an Illinois corporation ("Borrower") hereby promises to pay to the order of CHIZUCO COLEMAN ("Payee"),
in the manner provided hereinafter, the principal sum of Eight Hundred Thousand Dollars ($800,000.00), with
interest thereon, as set forth in Section 2 hereof.

2.      **REQUIRED PAYMENTS OF INTEREST AND PRINCIPAL.**

2.1      **Payment of Principal; Interest.** Commencing on October 27, 2006 and on the 27th
day of each calendar month thereafter, sixty (60) installment payments of principal and interest
payments shall be paid in the amount of Nine Thousand Seven Hundred and Six Dollars and Twenty
One Cents ($9,706.21) including interest at the rate of eight percent (8%) per annum, with the last
payment of principal due on October 27, 2011, in the amount of Four Hundred Seventy Eight
Thousand Six Hundred Ninety Four Dollars and Seventy Eight Cents ($478,694.78) plus any and all
accrued but unpaid interest.

2.2      **Interest after Default.** From and after the occurrence of (i) any default in the
payment of principal or interest when due in accordance with the terms hereof after notice and
expiration of applicable cure periods, (ii) a Default (as hereinafter defined) under this Note, or (iii) the
Maturity Date (as hereinafter defined) of this Note, whether by acceleration or otherwise, interest shall
accrue on the amount of the principal balance outstanding hereunder at the Default Rate. The Default
Rate shall be that rate which is five percent (5.0%) per annum above the Interest Rate. Interest
accruing at the Default Rate shall be payable on demand.

2.3      **Maturity Date.** The entire outstanding principal balance and accrued interest thereon
shall be due and payable on October 27, 2011 unless due earlier and payable by reason of the
acceleration of the maturity date as set forth herein.

2.4      **Calculation of Interest.** Interest on this Note shall be calculated on the basis of a
360-day year and the actual number of days elapsed in any portion of a month for which interest may
be due.

2.5      **Prepayment.** Borrower shall have the right to prepay all or any portion of this Note
at any time during the term of this Note without premium or penalty.

2.6      **Payment Time.** All payments shall be delivered in good funds to Payee prior to
12:30 p.m., Chicago time, on the date due at its principal office at N9110 11th Drive, Westfield,
Wisconsin 53964, or at such other place as Payee designates in writing.

2.7      **Set-Offs.** Notwithstanding anything to the contrary contained herein, all payments
due hereunder are subject to the provisions of that certain Stock Purchase Agreement among the
Borrower, the Payee, Hoshang R. Karani, as Guarantor and Coleman Fire Proof Door Co., an Illinois
corporation, ("Coleman") including but not limited to the provisions for set off, suspension and escrow
of payments as set forth in Section 9 thereof.



EXHIBIT

E

3. **APPLICATION OF PAYMENTS.** Prior to the occurrence of any Default, all payments received on account of the indebtedness evidenced by this Note shall be first applied to accrued interest due on the outstanding principal balance, with the remainder, if any, to be applied to the outstanding principal balance. Prior to the occurrence of any Default, a prepayment may be made on not less than five (5) days prior written notice of the principal balance of this Note, in whole or in part, on any interest payment date; provided, however, that each prepayment shall be accompanied by a payment of all interest accrued as of that date on the principal balance outstanding hereunder.

From and after the occurrence of a Default, Payee is expressly authorized to apply payments made under this Note as Payee may elect against any or all amounts, or portions thereof, then due and payable hereunder, as defined in Section 5 below, the outstanding principal balance due under this Note, the unpaid and accrued interest due under this Note, or any combination of the foregoing.

4. **METHOD AND PLACE OF PAYMENT.** All payments made on account of the indebtedness evidenced by this Note shall be made in currency and coin of the United States of America which shall be legal tender for public and private debts at the time of payment. Said payments and prepayments are to be made at such place as the legal holder of this Note may appoint from time to time in writing and, in the absence of such appointment, then at the office of Payee at N9110 11th Drive, Westfield, Wisconsin 53964.

5. **DEFAULT.** The following events shall constitute events of default under this Note (a "Default"):

(a)     default in the payment of principal within five (5) days after written notice that it is due in accordance with the terms hereof;

(b)     default in the payment of interest within five (5) days after written notice that it is due in accordance with the terms hereof;

(c)     default in the performance or observance of any other covenant or agreement of Borrower contained herein, which default continues for a period of fifteen (15) days after written notice of such default;

(d)     if all or a substantial part of the assets of Borrower is attached, seized, subjected to a writ or distress warrant, or is levied upon, unless such attachment, seizure, writ, warrant or levy is vacated within thirty (30) days;

(e)     if Borrower is enjoined, restrained or in any way prevented by court order from performing any of its obligations hereunder or conducting all or a substantial part of its business affairs; or if a proceeding seeking such relief is not dismissed within ninety (90) days of being filed or commenced;

(f)     if a notice of lien, levy or assessment for unpaid taxes is filed of record with respect to all or any part of the property of Borrower, by the United States, or any other governmental authority, unless contestable and actually and diligently contested in accordance herewith;

(g)     if Borrower shall sell all or substantially all of its assets or shall merge or consolidate with or into any other entity or shall cause the sale of all or substantially all of the assets of Coleman or the sale, merger or consolidation of Coleman with or into any other entity;

654646-6

2

(h)    if Borrower shall be in default in the payment or performance of any material agreement to which Borrower is a party;

(i)    if Borrower or any Guarantor of Borrower's obligations hereunder:

(i)    Shall file a voluntary petition in bankruptcy or for arrangement, reorganization or other relief under any chapter of the federal Bankruptcy Code or any similar law, state or federal, now or hereafter in effect;

(ii)    Shall file an answer or other pleading in any proceedings admitting insolvency, bankruptcy or inability to pay its debts as they mature;

(iii)    Within ninety (90) days after the filing against it of any involuntary proceedings under the federal Bankruptcy Act or similar law, state or federal, now or hereafter in effect, such proceedings shall not have been vacated;

(iv)    Any order appointing a receiver, trustee or liquidator for it or for all or a major part of its property or its business shall not be vacated within thirty (30) days following entry thereof;

(v)    Shall make an assignment for the benefit of creditors or shall admit in writing its inability to pay its debts generally as they become due or shall consent to the appointment of a receiver or trustee or liquidator of all or the major part of its property, or its business; or

(j)    if any Guarantor of Borrower's obligations shall die;

then, at any time thereafter, at the election of the holder or holders hereof, the principal sum remaining unpaid hereon, together with accrued interest thereon, shall become at once due and payable at the place of payment as aforesaid, and Payee may proceed to exercise any other rights and remedies available to Payee under the Note and the Security Agreement which Payee may have at law, in equity or otherwise.

6.    **WAIVER.**  The remedies of Payee as provided herein, shall be cumulative and concurrent, and may be pursued singularly, successively or together, at the sole discretion of Payee, and may be exercised as often as occasion therefor shall arise. Failure of Payee, for any period of time or on more than one occasion, to exercise its option to accelerate the Maturity Date of this Note shall not constitute a waiver of the right to exercise the same at any time thereafter or in the event of any subsequent Default. No act of omission or commission of Payee, including specifically any failure to exercise any right, remedy or recourse, shall be deemed to be a waiver or release of the same; any such waiver or release is to be effected only through a written document executed by Payee and then only to the extent specifically recited therein. A waiver or release with reference to any one event shall not be construed as a waiver or release of any subsequent event or as a bar to any subsequent exercise of Payee=s rights or remedies hereunder. Except as otherwise specifically required herein, notice of the exercise of any right or remedy granted to Payee by this Note is not required to be given.

7.    **ENFORCEMENT COSTS.**  If (i) this Note is placed in the hands of an attorney for collection or enforcement or is collected or enforced through any legal proceeding; (ii) an attorney is retained to represent Payee in any bankruptcy, reorganization, receivership or other proceedings affecting creditors= rights and involving a claim under this Note; or (iii) an attorney is retained to represent Payee in any other

654646-6

3

proceedings whatsoever in connection with this Note, then Borrower shall pay to Payee all reasonable attorneys fees, costs and expenses incurred in connection therewith, in addition to all other amounts due hereunder.

8. **OTHER GENERAL AGREEMENTS.**

8.1 **General Covenants and Waivers.** Borrower, each guarantor hereof, if any, and any and all others who are now or may become liable for all or part of the obligations of Borrower under this Note (all of the foregoing being referred to collectively herein as "Obligors") agree to be jointly and severally bound hereby and jointly and severally: (i) to the extent permitted by law, waive and renounce any and all redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof; (ii) waive presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor and notice of protest; (iii) except as otherwise specifically set forth in this Note or the Security Agreement, waive all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default or enforcement of the payment hereof or hereunder; (iv) waive any and all lack of diligence and delays in the enforcement of the payment hereof; (v) agree that the liability of each of Obligors shall be unconditional and without regard to the liability of any other person or entity for the payment hereof, and shall not be affected in any manner by any indulgence or forbearance granted or consented to by Payee to any of them with respect hereto; (vi) consent to any and all extensions of time, renewals, waivers or modifications that may be granted by Payee with respect to the payment or other provisions hereof, and to the release of any security at any time given for the payment hereof, or any part thereof, with or without substitution, and to the release of any person or entity liable for the payment hereof; and (vii) consent to the addition of any and all other Borrowers, endorsers, guarantors and other obligors for the payment hereof, and to the acceptance of any and all other security for the payment hereof, and agree that the addition of any such obligors or security shall not affect the liability of any of the Obligors for the payment hereof. Time is of the essence hereof.

8.2 **Governing Law and Other Agreements.** Borrower agrees that: (i) this instrument and the rights and obligations of all parties hereunder shall be governed by and construed under the substantive laws of the State of Illinois, without reference to the conflict of laws principles of such state; (ii) the obligation evidenced by this Note is an exempted transaction under the Truth In Lending Act, 15 U.S.C. ' 1601, et seq.; and (iii) the proceeds of the indebtedness evidenced by this Note will not be used for the purchase of registered equity securities within the purview of Regulation "U" issued by the Board of Governors of the Federal Reserve System.

8.3 **Interpretation.** The parties hereto intend and believe that each provision in this Note comports with all applicable law. However, if any provision in this Note is found by a court of law to be in violation of any applicable law, and if such court should declare such provision of this Note to be unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such provision shall be given full force and effect to the fullest possible extent that it is legal, valid and enforceable, that the remainder of this Note shall be construed as if such unlawful, void or unenforceable provision were not contained therein, and that the rights, obligations and interests of the Borrower and the holder hereof under the remainder of this Note shall continue in full force and effect; provided, however, that if any provision of this Note which is found to be in violation of any applicable law concerns the imposition of interest hereunder, the rights, obligations and interests of Borrower and Payee with respect to the imposition of interest hereunder shall be governed and controlled by the provisions of the following paragraph.

654646-6

4

**8.4**    **Excess Interest.** It being the intention of Payee and Borrower to comply with the laws of the State of Illinois with regard to the rate of interest charged hereunder, it is agreed that, notwithstanding any provision to the contrary in this Note, no such provision, including, without limitation, any provision of this Note providing for the payment of interest or other charges shall require the payment or permit the collection of any amount ("Excess Interest") in excess of the maximum amount of interest permitted by law to be charged for the use or detention, or the forbearance in the collection, of all or any portion of the indebtedness evidenced by this Note. If any Excess Interest is provided for, or is adjudicated to be provided for, in this Note or any of the other Loan Documents, then in such event:

(a)    the provisions of this paragraph shall govern and control;

(b)    neither Borrower nor any of the other Obligors shall be obligated to pay any Excess Interest;

(c)    any Excess Interest that Payee may have received hereunder, at the option of Payee, shall be (i) applied as a credit against the then outstanding principal balance due under this Note, accrued and unpaid interest thereon not to exceed the maximum amount permitted by law, or both, (ii) refunded to the payor thereof, or (iii) any combination of the foregoing;

(d)    the applicable interest rate or rates shall be automatically subject to reduction to the maximum lawful rate allowed to be contracted for in writing under the applicable usury laws of the aforesaid State, and this Note, shall be deemed to have been, and shall be, reformed and modified to reflect such reduction in such interest rate or rates; and

(e)    neither Borrower nor any of the other Obligors shall have any action or remedy against Payee for any damages whatsoever or any defense to enforcement of the Note, or the Security Agreement arising out of the payment or collection of any Excess Interest.

**8.5**    **Successors and Assigns.** Upon any endorsement, assignment or other transfer of this Note by Payee or by operation of law, the term "Payee," as used herein, shall mean such endorsee, assignee, or other transferee or successor to Payee then becoming the holder of this Note. This Note shall inure to the benefit of Payee and its successors and assigns and shall be binding upon the undersigned and its successors and assigns. The terms "Borrower" and "Obligors," as used herein, shall include the respective successors, assigns, legal and personal representatives, executors, administrators, devisees, legatees and heirs of Borrower and any other Obligors.

**8.6**    **Notices.** All notices, demands or other communications required or permitted hereunder shall, unless otherwise expressly provided, be in writing and be deemed to have been properly given, served and received: (a) if delivered by messenger, when delivered; (b) if mailed, on the second (2d) business day after deposit in the United States, certified or registered, postage prepaid, return receipt requested; (c) if telexed, telegraphed or telecopied, two (2) hours after being dispatched by telex, telegram or telecopy, if such second (2nd) hour falls on a business day within the hours of 8:00 A.M. through 6:00 P.M. of the time in effect at the place of receipt, or at 8:00 A.M. on the next business day thereafter if such second (2nd) hour is later than 6:00 P.M.; or (d) if delivered by reputable overnight express courier, freight prepaid, the next business day after delivery to such courier; in every case addressed to the party to be notified as follows:

654646-6

5

If to Payee:                Chicuzo Coleman
                            N9110 11th Drive
                            Westfield, Wisconsin 53964

With a Copy to:             Donald J. Russ, Jr.
                            Chuhak & Tecson, P.C.
                            30 S. Wacker Drive, Suite 2600
                            Chicago, Illinois 60606

or to such other address(es) or addressee(s) as any party entitled to receive notice hereunder shall designate to the others in the manner provided herein for the service of notices. Failure to serve a copy of notice shall not invalidate any notice otherwise properly given.

    8.7     <u>**Waiver of Trial by Jury.**</u>  BORROWER AND PAYEE KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS NOTE, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR BORROWER AND PAYEE ENTERING INTO THE TRANSACTION EVIDENCED BY THIS NOTE.

    8.8     <u>**Venue.**</u>  TO THE MAXIMUM EXTENT PERMITTED BY LAW, BORROWER HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS TRANSACTION SHALL BE TRIED AND DETERMINED ONLY IN THE STATE AND FEDERAL COURTS LOCATED IN THE COUNTY OF COOK, STATE OF ILLINOIS. TO THE MAXIMUM EXTENT PERMITTED BY LAW, BORROWER HEREBY EXPRESSLY WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF <u>FORUM NON CONVENIENS</u> OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE WITH THIS SECTION.


    [THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

654646-6

**IN WITNESS WHEREOF,** the undersigned, through its duly authorized representatives, has executed this Note as of the day and year first above written.

SPENTA ENTERPRISES LTD. an Illinois corporation

By: _____

Name: _____ HOSHANG R. KARANI

Its: _____ CEO

COPY