IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPENTA ENTERPRISES, LTD., | ) | |
| an Illinois corporation, and | ) | |
| HOSHANG R. KARANI, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civ. No.  08 C 0495 |
| CHIZUCO COLEMAN, and | ) | Judge Robert W. Gettleman |
| ROBERT COLEMAN, | ) | |
| Defendants. | ) | |

**PLAINTFFS' RULE 59(e) MOTION TO RECONSIDER AND AMEND
AUGUST 4, 2008 MEMORANDUM OPINION AND ORDER**

The Plaintiffs, Spenta Enterprises, Ltd. ("Spenta") and Hoshang R. Karani ("Karani")

("Plaintiffs"), by their attorney, Ralph C. Hardesty, respectfully submit this motion for

reconsideration of this Court's August 4, 2008 Memorandum Opinion and Order ("the

Order")(attached hereto as Exhibit A) pursuant to Federal Rule of Civil Procedure 59(e).  In the

Order, this Court ruled that the "choice of forum" provision of the Stock Purchase Agreement

("SPA") setting the venue as "the courts within the State of Illinois (located within Lake

County)" requires all the claims of the parties, including the all statutory securities fraud claims

and state law tort fraud claims, to be brought in Illinois state court, in Lake County, Illinois.  By

this ruling, the Court dismissed the entirety of Plaintiffs' Complaint, including their federal

securities claims, and state law tort claims, along with all contract-related claims, with the

suggestion that Plaintiffs must bring their claims in Lake County court.  With all due respect,

Plaintiffs request that this Court reconsider and amend its ruling under Rule 59(e), based on the

arguments set forth below.

**I.    STANDARDS UNDER RULE 59(e).**

Federal Rule of Civil Procedure 59(e) provides that "any motion to alter or amend a

judgment shall be filed no later than 10 days after entry of judgment."  Fed. R. Civ. P. 59(e).

This motion, filed and served on August 14, 2008, is timely under the requirements of Rule 59(e).[1]

Rule 59(e) provides the procedural mechanism by which an aggrieved party may seek to alter or amend a previous judgment. This Court has broad discretion in determining whether to grant such a motion. *See* In re Prince, 85 F.3d 314, 324 (7th Cir. 1996), *cert. denied*, 519 U.S. 1040 (1996) ("the decision whether to grant or deny a Rule 59(e) motion is entrusted to the sound judgment of the district court…").

Rule 59(e) is a vehicle to direct the court's attention to newly discovered evidence, or a manifest error of law, or of fact.  Neal v. Newspaper Holdings, Inc., 349 F.3d 363, 368 (7th Cir. 2003); Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995). "Manifest error" consists of, respectfully, the "wholesale disregard, misapplication, or failure to recognize controlling precedent."  Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000); Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997).  A Rule 59(e) motion is appropriate when "the court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension."  Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.3d 1185, 1191 (7th Cir. 1990).[2]

---

[1] A timely Rule 59 (e) motion tolls the time for appealing. Fed. R. App. P. 4(a)(4). A motion seeking to alter or amend a judgment, however the motion be labeled, is deemed a Rule 59(e) motion, provided it is served within ten days. Charles v. Daley, 799 F.2d 343, 347 (7th Cir. 1986)(served, not just filed).  *See also* Curry v. United States, 307 F.3d 664, 666 (7th Cir. 2002) ("a motion filed within 10 days after the judgment is, regardless of its label, to be treated as a Rule 59(e) motion," so long as it comes within the scope of Rule 59(e)).

[2] The Plaintiffs are well aware that Rule 59(e) is not intended as a means by which a party may acquire "another bite at the apple" – that is, it is not merely a tool by which a party may simply "rehash[] old arguments." Oto v. Metropolitan Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000).  This standard does not allow the re-litigation of the issues argued and ruled on by the Court. The mere disagreement with the Court's analysis is not the point of such a motion. Smith v. City of Chester, 155 F.R.D. 95, 97 (E.D. Penn. 1994). The court's opinions are "not mere drafts, subject to revision and reconsideration at a litigant's

Based on these standards, the Plaintiffs respectfully ask this Court to reconsider and amend its August 4th ruling in this case.

**II.     The SPA Choice of Forum Clause Did Not Cover What or Where Tort or Other Non-Contract Claims Can be Litigated.**

Inherent in the Court's decision is that because the SPA between the parties provides for a "choice of forum," that that choice of forum somehow also limited the other non-contract claims Plaintiffs could assert, and the forum where such claims must be brought.  Respectfully, this Court misconstrued the SPA, the scope of the choice of forum provision, and the applicable law that governs these issues.

While parties can indeed expressly waive important substantive and procedural rights by including a forum clause in a contract, *see* Hoes of America, Inc. v. Hoes, 493 F. Supp. 1205 (C.D. Ill. 1979), if the parties by contract limit their rights, duties and obligations by express agreement, the contract must *clearly* show that the stipulated remedy is to be the sole or exclusive remedy.  Ill. State Toll Highway Authority v. Gust K. Newberg, Inc., 126 Ill. Dec. 355, 531 N.E.2d 982 (2d Dist. 1988).  The contract here does not establish such restrictions.

This Court in this case is dealing with a choice of law and a choice of forum provision that were contained in one paragraph, so it is understandable the merger that the Court gave to the provision, but choice of law, and choice of forum, are in fact two distinct concepts.  The SPA section, the language of which is very important to this question, provided as follows:

> **Governing Law; Submission to Jurisdiction**.  *This Agreement shall be governed by, construed and enforced in accordance* with, the laws of the State of Illinois.  Courts within the State of Illinois (located within Lake County) *will have* exclusive jurisdiction over *all disputes between the parties arising out of or relating to this Agreement and the other transaction documents*….   SPA, Para. 9.5 (emphasis added).

---

pleasure."  Quaker Alloy Casting Co. v. Gulfco, Inc., 123 F.R.D. 282, 288 (N.D. Ill. 1985).  As set forth herein, the instant motion is not a mere disagreement with this Court's ruling.

Nothing in this provision suggests the exclusive remedy of Illinois contract claims only, nor does it show the exclusivity of only Illinois state law for all tort or statutory claims that would arise, as the Court reads into it, based on its Order.

It must first be determined whether the subject matter of the dispute is even contemplated by the terms of the clause. Clinton v. Janger, 583 F. Supp. 284 (N.D. Ill. 1984). Clearly, tort claims and federal securities claims were *not* contemplated by the parties as being within this clause and are not even referred to in the section. All references in the section are to the contract and the other transaction documents. *See* United States v. Illinois, 144 F. Supp. 2d 990 (C.D. Ill. 2001)(did the parties intend exclusive remedies to apply, and without a clear showing that the parties intended to limit their remedies the contract is to be read to allow cumulative, and not exclusive, remedies).

Generally, a forum selection clause only requires any *breach of contract* action to be brought under it. Progressive Publishing, Inc. v. Capital Color Mail, Inc., 500 F. Supp. 2d 1004 (N.D. Ill. 2007). A choice of law provision only governs the contract's validity and construction and does not generally apply to other tort issues. Annecca, Inc. v. Lexent, Inc., 345 F. Supp. 2d 897 (N.D. Ill. 2004). While Plaintiffs still argue that the SPA choice of forum should not be applied here at all (*see infra* Part III), if it is to be applied, it should only be applied as to the contract claims themselves. Plaintiffs should be free to bring their tort claims, and their federal securities fraud claims, wherever they choose and may do so by applicable law, and they have chosen this federal forum to do so.

Under Illinois conflict of laws rules, the court looks to whether the choice of law provision in the contract encompasses *all* rights and liabilities arising from the transaction, or solely the construction of the contract. Amakua Dev. LLC v. Warner, 411 F. Supp. 2d 941 (N.D. Ill. 2006)(California law would be applied only to the contract that was to be "governed and

construed" by that law).  Whether a contract's choice of law provisions govern tort as well as contract claims turn on the intention of the parties as expressed in the contract.  Medline Industries, Inc. v. Maersk Medical Ltd., 230 F. Supp. 2d 857 (N.D. Ill. 2002).  The court must ask, does the language of the provision encompass "all rights and liabilities of the transaction" or is it solely to govern the construction of the contract?  Only tort claims that are dependent upon the contract are subject to the choice of law provision.  Medline, *supra*.

The SPA's choice of law/forum provision here is not all encompassing, but rather is limited only to interpretation and enforce of the SPA:  "*This Agreement shall be governed by, construed and enforced in accordance* with, the laws of the State of Illinois.  Courts within the State of Illinois (located within Lake County) *will have* exclusive jurisdiction over *all disputes between the parties arising out of or relating to this Agreement and the other transaction documents*….   SPA, Para. 9.5 (emphasis added).  This language is not wide-reaching, such as "all differences or claims between the parties" or other such all encompassing language.  *See e.g.* Vijuk Equipment Inc. v. Otto Honner KG, 728 F. Supp. 1368 (N.D. Ill. 1990)("all eventual differences arising from this contract" were covered by the forum selection provision); Walker v. Carnival Cruise Lines, Inc., 681 F. Supp. 470 (N.D. Ill. 1987)("all disputes and matters whatsoever, arising under, in connection with, or incident to this contract" were covered by clause).  Clearly the express intent of the parties here was to apply Illinois law to the construction of the SPA alone (and also, if as the Court has ruled, the choice of forum term for such contract claims), and not in any way to limit non-contract claims or remedies that were also available and not expressly waived by the parties.

Further, the fraud claims alleged in the Complaint, that is, the securities fraud and the common law fraud, much of which concerns pre-contract conduct by Defendants, has nothing to do with the SPA itself, and should not be cut off because of this choice of forum/law provision.

These tort claims do not "arise out of" the SPA—they are independent of it, and stand on their own even without the SPA.  For example, the pre-closing falsification of the financial statements, billing in excess of work performed on contracts, overstatement of sales and cash flow numbers, manipulation of inventory numbers, inflation of profit margins, keeping two sets of accounts receivable, taking bank records and cash and other misrepresentations (*see, e.g.*, Complaint at paras. 11 to 32, 109-110, and 122-123) all took place prior to execution of the SPA to induce the purchase, or took place at the time of sale, and these acts are independent of the SPA.

Only those disputes, the resolution of which depends upon a construction of the contract, can be said to "arise out of" that contract for purposes of application of a forum selection clause. Omron Healthcare, Inc. v. Maclaren Exports, Ltd., 28 F.3d 600 (7th Cir. 1994)(trademark claim found to arise out of distribution agreement).  A forum selection clause controls for claims if the claim is intimately connected to the contract's terms and require analysis of the contract itself, and the rights and obligations set out in the contract.  Boatwright v. Delott, 207 Ill. App. 3d 916, 642 N.E.2d 875 (1st Dist. 1994).  While "a forum selection clause can be equally applicable to contractual and tort causes of action,…[w]hether a forum selection clause applies to tort claims depends on whether the resolution of the claims relates to interpretation of the contract." Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988); Lambert v. Kysar, 983 F.2d 1110, 1121 (1st Cir. 1993)("contract-related tort claims involving the same operative facts as a parallel claim of breach of contract" come within the forum selection clause).

Here, they do not.  False financial statements, manipulation of sales, inventory and profit numbers, keeping two sets of accounts books, over-billing contracts and making false representations about the financial condition of the company do not relate to any interpretation of the contract.  *See also* Astor Chauffeured Limosine Co. v. Runnfeldt Inv. Corp., 910 F.2d 1540

(7th Cir. 1990)(contract provision that claims for breach of representations and warranties must be brought within 180 days of closing did not apply to securities fraud claim for pre-contract misrepresentations).

      With all due respect, this Court overreached when applying the SPA choice of forum provision so as to bar the Plaintiffs from their claims in federal court for non-contract securities fraud and common law fraud against the Defendants.  Certainly Plaintiffs did not envision that the choice of forum provision (actually only one of several conflicting provisions) would cause Plaintiffs to be held to waive their federal securities claims, and prevent the bringing of all fraud claims in this Court.

**III.**    **The Court's Ruling Selecting the SPA's Choice of Forum Provision Over the Four Others Constitutes a Re-writing of a Contract Between <u>Sophisticated Parties In A Manner They Never Intended.</u>**

      The Court failed to apply Illinois contract construction law to the SPA and the related documents, and it should not have concluded that only one forum clause was intended. The Court's ruling discounted three out of four negotiated-for choice of forum provisions in four different transaction documents that in fact (contrary to the Court's statement) were incorporated for all purposes into the SPA, "as if set forth fully herein."  *See* Order at 6.  The Court's conclusion that they were only incorporated as to their substantive terms is not correct.  Attached as Exhibit B are the two provisions of the SPA which incorporate the schedules and exhibits fully into the SPA, one of which reads, "[a]ll Exhibits and Schedules attached to this Agreement shall be deemed incorporated herein by reference as if fully set forth herein. Words such as "herein," "hereof," "hereby," and "hereunder" refer to this Agreement and to Schedules *taken as a whole*." (emphasis added).  Further, if the choice of forum term has become as critical as this Court has made it, thereby denying Plaintiffs important substantive rights to pursue securities

claims, then the choice of forum provisions are certainly substantive in nature, and not merely procedural venue-type provisions.

While this Court set forth in detail all four of choice of forum provisions, it then ignored that that is precisely what the parties, each represented by able counsel, agreed to.  If it was just the SPA provision, and one other, it might be concluded the parties could not have intended that other provision to stand as well.  But here, the fact that the choice of forum was different in four separate but incorporated documents of this deal, there must have been a reason for it.  Discovery would resolve that question of why the parties would do this.  But this Court should not rewrite the contract between the parties in this manner to excise three other bargained for provisions in favor of the one provision that robs Plaintiffs of their substantive rights.

This situation, even if bargained for, certainly made the SPA's choice of forum provision ambiguous and it was this Court's duty to reconcile the provisions, not extract out the ones that made this issue more complicated.  *See* Whirlpool Corp. v. Certain Underwriters at Lloyd's of London, 278 Ill. App. 3d 175, 180, 662 N.E.2d 467, 471 (1st Dist. 1996)("Good policy dictates that a true forum selection clause should be clear and specific…" and the court concluded "[t]his clause is not").

On page 6 of the Order, this Court opines that, despite the other conflicting forum provisions, the parties must have meant the SPA forum clause to control.  First, under Illinois law, which the parties agreed should control here, the rule of contract interpretation that this Court must use is to interpret the contract as a whole and give meaning to *all provisions of the contract and render them consistent with one another.* Kloman v. Illinois Municipal Retirement Fund, 284 Ill. App. 3d 224, 674 N. E. 2d 38 (1st Dist. 1996); River Forest State Bank v. Rosemary Joyce Enterprises, Inc., 294 Ill. App. 3d 173, 689 N. E. 2d 163 (1st Dist. 1997).

Illinois contract law presumes that all provisions were inserted for a purpose, and

conflicting provisions will be reconciled if possible so as to give effect to all of the contract's provisions. <u>Mayfair Construction Co. v. Waveland Associates Phase I Ltd. Partnership</u>, 249 Ill. App. 3d 188, 619 N.E.2d 144 (1st Dist. 1993). The Court here did not follow that rule of law, but selected one of the conflicting provisions as controlling.

The only forum that will give effect to each of the different choice of forum provisions, and the *only* forum that satisfies *all* of the provisions, is this federal district court. Under the well-settled Illinois law of contract construction, this Court must give effect to all provisions of the entire document, and that means allowing the action to go forward in this forum.

Moreover, the Court has over-read the SPA forum provision, which on its face does not make the Lake County court forum mandatory by its own language. The SPA provision states that the "…Courts within the State of Illinois (located within Lake County) *will have* exclusive jurisdiction over *all disputes between the parties arising out of or relating to this Agreement and the other transaction documents*…. SPA, Para. 9.5 (emphasis added). It does not state the only real "mandatory" language of "shall." This is an important distinction. If the clause says "shall" that indicates an exclusive forum. <u>Yamada Corp. v. Yasuda Fire and Marine Ins. Co., Ltd.</u>, 305 Ill. App. 3d 362, 712 N.E.2d 926 (2d Dist. 1979).

Here, the language is only "will", and this Court should not read in a mandatory "shall" into the parties' contract that is not there. Thus, Lake Court courts cannot be the only and exclusive forum, based on the contract language chosen by the parties, and which should not be rewritten by this Court.

**IV.    The Federal Securities Statutes Do No Permit Waiver of Their**
        <u>**Remedies Absent Express Consent by the Parties.**</u>

The Court's opinion reading into the SPA that the parties gave up federal securities rights is not only contrary to the express provisions of the SPA, but also to the express language in the federal statutes. The language of the Securities Act of 1933 is clear and unambiguous that

waiver is not permitted: "any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission *shall be void*." *See* 15 U.S.C. sec. 77n (emphasis added). The Securities Exchange Act of 1934 also contains a similar restriction. *See* 15 U.S.C. sec. 78cc(a).

The parties here did not expressly waive their federal securities claims. To read into the contract such a waiver is contrary to these sections of the federal securities laws, and thus the Court should not make such an interpretation, particularly when the SPA is silent as to any waiver of such important rights.

The Court's citation to the Seventh Circuit case of <u>Bonny v. Society of Lloyd's</u>, 3 F.3d 156 (7th Cir. 1993) does not require the conclusions reached in this case by this Court. As noted by this Court, the body of law in this area largely concern international contracts, not a domestic contract as here. In <u>Bonny</u>, the court concluded that England was not an unreasonable choice of forum even if it might prospectively waived the rights of the American securities statutes, because the remedies available in England could vindicate those same rights. That is not the case here. (*See infra*, Part VI). Further, parties who accept a foreign country as the chosen forum for litigation can be presumed to have considered what they might be giving up by agreeing to such a foreign forum. This reasoning does not apply to a domestic party, such as Plaintiffs here, to a domestic contract where domestic forum(s) (actually four of them) were chosen and agreed to. <u>Bonny</u> is inapplicable to the facts here.

In the instant case, the choice of law provision mandates that Illinois law govern the interpretation of the rights of the parties, and Illinois law would never enforce a choice of forum clause that deprived a plaintiff of an important cause of action.

On page 8 of the Order, this Court recognizes that Illinois courts can find a forum selection clause unreasonable and unenforceable. The loss of Plaintiffs' federal securities claim

is certainly a more unreasonable hardship than the location of witnesses or inconvenience of the parties. It is the law and public policy of the State of Illinois, as embodied in its Constitution, that there should be a remedy for each wrong. *See* Ill. Constitution, Art. I, Sec. 12. See, e.g., Smith v. Mercy Hospital and Medical Center, 203 Ill. App. 3d465, 560 N. E. 2d 1164 (1st Dist. 1990)(Illinois guaranties a remedy in the law for all wrongs).

**V.     The SPA Choice of Forum Clause Is So Tainted By the Defendants' Fraud It Should Not be Enforced So As To Deny Plaintiffs' Federal Fraud Claims.**

A choice of forum provision may be invalidated for reasons of fraud, undue influence, or unequal overreaching in the bargaining process. The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972). *See also* Faur v. Sirius International Ins. Corp., 391 F. Supp. 2d 650 (N.D. Ill. 2000); Manufacturing & Marketing Concepts, Inc. v. Southern California Carbide, 920 F. Supp. 116 (N.D. Ill. 1996); Norman Security Systems, Inc. v. Monitor Dynamics, Inc., 740 F. Supp. 1364 (N.D. Ill. 1990). This Court erroneously concluded that "…nothing in the record suggests that the forum selection clause in the [SPA] was the result of fraud or undue influence." *See* Order at 10. A review of the Complaint, and its very specific allegations of fraud, suggests otherwise.

The Complaint here alleges specific bad acts by Defendants that run the gamut from falsifying financial records, removing cash from the business, collecting money on contracts for work not performed, overstating inventory, and understating payables and other liabilities. These were not mistakes, nor are they the subject of any contract interpretation. Defendants here systematically implemented a plan to over-value the business while looting all cash and receivables that they possibly could, to the Plaintiffs' great detriment. *See, e.g.*, Complaint at paras. 11 to 32, 109-110, and 122-123. It certainly cannot be said at this point in the litigation that Defendants did not knowingly and fraudulently insert conflicting forum provisions into the Agreement in order to make it more difficult for Plaintiffs to litigate their claims. Nothing in the

record indicates that the forum selection clauses are not the result of fraud, and most of the Complaint indicates that the entire deal was the result of Defendants' fraud and securities fraud.

While vague or general allegations of fraud are not enough to invalidate a forum selection provision, *see* <u>IFC Credit Corp. v. Rieker Shoe Corp.</u>, 378 Ill. App. 3d 77, 881 N.E.2d 382 (1st Dist. 2007), here the Plaintiffs' allegations were very specific, and are directed at the Defendants' pre-contract and negotiations phase fraud.  This is the kind of fraud that should vitiate a contract choice of forum provision.

Further, as the Supreme Court has indicated, the claims of fraud should be adjudicated before a dismissal based on contract terms. *See* <u>Moseley v. Electronic & Missile Facilities, Inc.</u>, 374 U.S. 167, 171 (1963)("it seems clear that the issue of fraud should first be adjudicated before the rights of the parties under the [contracts] can be determined").  Here, at a minimum, this Court should at least examined the fraud allegations, or even permit litigation of those claims, before determining that they do not vitiate this contract term.

**VI.    The Plaintiffs Do Not Have the Same Remedies Under Illinois State
As Under Federal Securities Laws, and Should Not Be Denied Such
<u>Claims That They Never Expressly Waived.</u>**

The Court's opinion went to issues beyond that which were even anticipated or briefed by the parties, and that included deciding that Plaintiffs had waived their rights to pursue federal securities claims by seemingly agreeing to the Lake County choice of forum provision in the SPA.  The Court, without much detail, noted that Plaintiffs' securities rights would be protected just as well under the Illinois securities statute as they would be under the federal securities statute alleged in the Complaint in this Court.  Respectfully, this is not correct, and in fact Plaintiffs are severely prejudiced now by the Court's after-the-fact reading because Illinois state courts, and Illinois state law, cannot provide sufficient remedies for Plaintiffs concerning securities and securities fraud.

First, the Illinois securities statutes do not provide for the same remedies that the federal securities law do. While the Court correctly noted that the same kinds of acts by the defendants are considered violations under both Illinois and federal statutory schemes, as this Court is likely aware, the Illinois statute severely limits the remedy that a victim of securities fraud can obtain. The Illinois law essentially limits the victim to "rescission damages," which is far narrower than the type and extent of damages afforded under the federal securities laws. *See* 815 ILCS 5/13A)(1)(2008)("[e]very sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section…." and the defendant shall be liable "for the full amount paid, plus together with interest from the date of payment…less any income or other amounts received by the purchaser…"). *See also* Kleban v. S.Y.S. Restaurant Management, Inc., 912 F. Supp. 361 (N.D. Ill. 1995)(rescission is the only remedy to purchaser under this section; court cannot award damages for violation); Rotstein v. Reynolds & Co., 359 F. Supp. 109 (N.D. Ill. 1973)(rescission is exclusive and only civil remedy available). This is certainly not the same kind of protections that Plaintiffs would receive under the federal securities laws, where damages are recoverable, nor would rescission even begin to cover the type and amount of damages these Plaintiffs have suffered at the hands of these Defendants, as alleged in the Complaint.

Further, by this Court's *ex post facto* banishment of the Plaintiffs to the Lake County courts, at the same time stripping them of their federal securities claims, and relegating them to only Illinois state securities remedies, the Court may well have taken away *all* statutory securities claims from these Plaintiffs, because the Illinois state statute requires a six month notice of election to be given after discovering the fraud, and Plaintiffs may not have given such a specific notice, as they did not know they had to, as they were proceeding, not under Illinois state law, but federal law. *See* 815 ILCS 5/13(B)("notice of any election provided for by

subsection A of this Section shall be given by the purchaser within 6 months after the purchaser shall have knowledge that the sale of the securities to him or her is voidable…").   The courts have strictly applied this notice requirement.  *See* Jacks v. Schneider Securities, Inc., 217 F.3d 525 (7th Cir. 2000)(even letters from plaintiff to defendant raising questions, or stating he had claims under Illinois law, demanding money back, were not the same as the notice of rescission required by this section).

Here, the securities were purchased at the time of closing on September 28, 2006.  The fraud was at least preliminarily discovered in the next few months thereafter.  Plaintiffs secured their current counsel only in January 2008, and this action was filed in that same month, which of course was long after any six month notice period would have elapsed.  The Court's ruling, now almost two years after the closing, creates a great prejudice to the Plaintiffs if their only remedy for securities fraud is now under Illinois statute, a statute they may not even be able to avail themselves of at this point.

Thus, the Plaintiffs' rights may likely not be protected by the Illinois securities statute at this juncture, nor would they have the same remedies available thereunder, as they would under federal law.  Clearly, Plaintiffs, at the time of signing the SPA, had no intention or clue that the contract would be construed to attribute a knowing waiver of such important rights by them.  For this Court to read in a waiver that was never expressed or contemplated by the parties, that has this severe an effect on Plaintiffs, is contrary to the law applicable to this issue.  *See supra*.

**VII.     The Court Improperly Shifted the Burden of Proof On To Plaintiffs**
**          Concerning the Application of the SPA Choice of Forum Provision.**

By its ruling, the Court improperly, and without giving Plaintiffs any opportunity to address the issue, shifted the burden of proof to Plaintiffs from Defendants as to why the SPA choice of forum provision should not be applied.  This conclusion denied Plaintiffs the

opportunity to address it from their side, and not from Defendants' perspective, whether the factors against application of the SPA provision are met.

If Plaintiffs are now to be seen as the party "objecting" to a forum clause's enforcement, Plaintiffs are required to show that the litigation in the selected forum would be so burdensome that they would have no real opportunity to litigate the issues in a fair manner, and that the clause's enforcement deprives the party of access to the courts.   Aon Corp. v. Utley, 371 Ill. App. 3d 562, 569, 863 N.E. 2d 701, 707 (1st Dist. 2006).

Plaintiffs argue that the SPA provision should not be enforced against them.  As has been demonstrated *supra*, Plaintiffs' rights will not be protected in the forum designated by the SPA provision.  Rather, the ability of the Defendants to commit securities fraud without consequence will be advanced and endorsed.  Plaintiffs thus will be denied a real and fair opportunity to litigate the issues (including securities fraud), and it amounts to denying Plaintiffs access to the only court that will permit and is able to hear its (federal) securities claims.  These factors outweigh other issues such as where the parties reside, and where the witnesses are located.  This Court should reconsider its Order so as to preserve Plaintiffs' substantive claims and permit them to be litigated, as the parties intended, and as the law should allow.

## <u>CONCLUSION</u>

Based on the foregoing arguments, Plaintiffs respectfully ask that this Court reconsider and amend its August 4th, 2008 Memorandum Opinion and Order, and issue an amended order which addresses the issues raised by this Rule 59(e) motion.

Dated: August 14, 2008                    Respectfully submitted,

                                          Plaintiffs Spenta Industries, Ltd. and
                                          Hoshang R. Karani

                                           _S/ Ralph C. Hardesty_
                                          Their Attorney

Ralph C. Hardesty
Hardesty & Associates
55 W. Monroe St. Suite 3720
Chicago, IL 60603
312-346-0045
Attorney No. 6184066